**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

*Filed and Attested by the*
*Office of Judicial Records*
*12 MAY 2025 11:53 pm*
*G. IMPERATO*

Sergei Kovalev
5305 Oxford Avenue
Philadelphia, PA 19124
215-839-9562

| | |
|---|---|
| SERGEI KOVALEV,<br>　　　　　　Plaintiff,<br>　　　v.<br>LAMONT E. ROGERS,<br>CITY OF PHILADELPHIA,<br>PHILADELPHIA POLICE DEPARTMENT,<br>PHILADELPHIA DEPARTMENT OF PUBLIC HEALTH,<br>PHILADELPHIA DEPARTMENT OF LICENSES AND INSPECTIONS,<br>PHILADELPHIA DISTRICT ATTORNEY'S OFFICE,<br>CHERELLE L. PARKER, Mayor of the City of Philadelphia, in his individual capacity,<br>KEVIN J. BETHEL, Police Commissioner, in his individual capacity,<br>MARQUES NEWSOME, Captain and Commander of the 15th Police District, in his individual capacity,<br>PALAK RAVAL-NELSON, Health Commissioner for the Department of Public Health, in her individual capacity,<br>BRIDGET COLLINS-GREENWALD, Commissioner of the Department of Licenses and Inspections, in her individual capacity,<br>BASIL L. MERENDA, Commissioner of the Department of Licenses, in his individual capacity,<br>LAWRENCE S. KRASNER, District Attorney, in his individual capacity,<br>and DOES 1 through 5,<br>　　　　　　Defendants. | CIVIL ACTION<br><br>JANUARY TERM, 2025<br><br>No. 00141<br><br>**JURY TRIAL DEMANDED** |

**THIRD AMENDED COMPLAINT**

- 1 -

Case ID: 250100141

1. Plaintiff, Sergei Kovalev, brings this legal action and seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, litigation costs and attorneys' fees, and all other available remedies against the involved parties and alleges as follows.

**PARTIES**

2. Plaintiff Sergei Kovalev is an adult individual, and a resident of the City of Philadelphia in the State of Pennsylvania.

3. Defendant Lamont E. Rogers (hereinafter referred to as "Rogers" or "Property Owner") is the registered owner of the property located at 5307 Oxford Avenue, Philadelphia, PA 19124 (the "Property").

4. Defendant City of Philadelphia (hereinafter referred to as "Philadelphia") is a municipality within the State of Pennsylvania with administrative offices located at 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania 19102, among other multiple locations.

5. Defendant Philadelphia Police Department is the department within the City of Philadelphia designated for protecting the life, safety, and security of all Philadelphians. Headquarters of the Philadelphia Police Department are located at 400 N. Broad Street, Philadelphia, PA 19103.

6. Defendant Philadelphia Department of Public Health is the department within the City of Philadelphia that was created for protection of the health of all Philadelphians. Philadelphia Department of Public Health is located at 1101 Market Street, 13th Floor, Philadelphia, PA 19107.

7. Defendant Philadelphia Department of Licenses and Inspections is the department within the City of Philadelphia that is responsible among other things for business and trade licensing in Philadelphia. Philadelphia Department of Licenses and Inspections is located at 1401 John F. Kennedy Blvd., 11th Floor, Philadelphia, PA 19102.

- 2 -

Case ID: 250100141

8.  Defendant Philadelphia District Attorney's Office is the office of the Philadelphia County District Attorney that is responsible for investigating and prosecuting crimes in the City and County of Philadelphia. Philadelphia District Attorney Office is located at 3 South Penn Square, Philadelphia, PA 19107.

9.  Defendant Cherelle L. Parker is a Mayor of the City of Philadelphia. This Defendant is sued in individual capacity.

10.  Defendant Kevin J. Bethel is Police Commissioner of the Philadelphia Police Department. This Defendant is sued in individual capacity.

11.  Defendant Marques Newsome is a Captain and Commander of the 15th Police District for the Philadelphia Police Department. This Defendant is sued in individual capacity.

12.  Defendant Palak Raval-Nelson is Health Commissioner for the Department of Public Health for the City of Philadelphia. This Defendant is sued in individual capacity.

13.  Defendant Bridget Collins-Greenwald is Commissioner of the Department of Licenses and Inspections for the City of Philadelphia. This Defendant is sued in individual capacity.

14.  Defendant Basil L. Merenda is Commissioner of the Department of Licenses and Inspections for the City of Philadelphia. This Defendant is sued in individual capacity.

15.  Defendant Lawrence S. Krasner is District Attorney for the City and County of Philadelphia. This Defendant is sued in individual capacity.

16.  Defendants City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner hereinafter can be referred to as "Official Defendants."

17.  The true names and capacities of additional Defendants named herein as Does 1-5

Case ID: 250100141

(persons, companies, corporations, participants and associates) are not fully established at present time and Plaintiff therefore sues them under fictitious names. Plaintiff will amend his Complaint when true names and capacities of additional Does would become known.

## JURISDICTION AND VENUE

18.    Pennsylvania State Courts have jurisdiction over this legal action and all parties pursuant to 42 Pa. C.S. § 931 (original jurisdiction and venue), § 5301 (relationship with this Commonwealth constituting a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction), § 5308 (minimum contacts).

19.    Plaintiff is a resident of the City of Philadelphia and the State of Pennsylvania.

20.    Defendant Lamont E. Rogers is conducting his business and property rental activities in the City of Philadelphia and in the State of Pennsylvania.

21.    All official Defendants are conducting their business affairs in the City of Philadelphia of the State of Pennsylvania.

22.    Venue is proper in the Philadelphia County of Pennsylvania under 42 Pa. C.S. § 931 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the City of Philadelphia and in the State of Pennsylvania.

23.    All Defendants continuously maintained business presence in the State of Pennsylvania and in the City of Philadelphia, and had systematic contacts with Pennsylvania and the City of Philadelphia.

24.    Defendants subjected themselves to personal and general jurisdiction of the Pennsylvania state courts; therefore, rendering the exercise of jurisdiction by this Court is proper and necessary.

Case ID: 250100141

**FACTS**

25.   According to the public records, Defendant Lamont E. Rogers acquired the property located at 5307 Oxford Avenue, Philadelphia, PA 19124 on or about June 22, 2021.

26.   The 5307 Oxford Avenue property is adjoining to Plaintiff's property and both are sharing the same side wall due to the fact that properties were constructed as "row houses."

27.   As such, all illegal activities performed by the occupants of the 5307 Oxford Avenue property are directly affecting Plaintiff and his property.

28.   The property located at 5307 Oxford Avenue, Philadelphia, PA 19124 is zoned "mixed use – commercial and residential" and it has a space occupied as a barbershop (that appears to be fake and unlicensed) on the first floor and two apartments upstairs.

29.   Official records indicate that the property at 5307 Oxford Avenue, Philadelphia, PA 19124 has no business licenses; however, in reality the property owned by Defendant Rogers has numerous illegal and criminal enterprises operated at his property.

30.   To the best recollection, the previous owner of the 5307 Oxford Avenue property rented his property to the individual (with currently unknown name that can be referred as "Barbershop Owner") who started his "barbershop" illegal operation at that location around the year 2009, or even before.

31.   So-called "barbershop" used in the course of these many years different names, including "Tha Hair Mechanics" and "LetsGetsItCut" but according to the search of the records, none of such places were ever related to any business licenses.

32.   From the time of moving into the area, the occupants of 5307 Oxford Avenue were and still are constantly (on daily basis) creating public and private nuisance that was utmost disturbing to the owners of adjoining properties, including Plaintiff.

33.   Upon information and belief, most of the occupants and operators of the so-called

Case ID: 250100141

"barbershop" and the related apartments on the second floor had and have the extensive criminal background.

34.    From the time when the people occupying the first floor of the 5307 Oxford Avenue property established their so-called "barbershop," the place became a magnet for police activities and complaints about illegal activities conducted by the property occupants and by the group of individuals that opened and started operation of the barbershop (that appears to be never licensed and illegal) at such location.

35.    From the time when this "barbershop" started its operations approximately about 14 years ago, it was always a place of constant abhorrent nuisance accompanied with use of illegal drugs and other drugs-related activities involving the people associated with and operating the "barbershop."

36.    From the time when the people that organized so-called "barbershop" moved to 5307 Oxford Avenue property, about fourteen years ago, these individuals were always involved in drugs-fueled heated conversations in extremely loud amplified voices on the sidewalks, in front and behind of 5307 Oxford Avenue property. The occupants of the barbershop were often shouting about "getting high."[1]

37.    For the last fourteen years, when the groups of barbershop occupants were emerging from the property, these people were appearing to be usually under the influence of illegal drugs.

38.    From the time when 5307 Oxford Avenue barbershop opened its "business", the sidewalk became littered with small empty plastic bags (about ½ x ½ inch) that are usually used **by drug dealers** to package crack cocaine and/or amphetamines, and/or other illegal drugs. However, nobody in the neighborhood was using drugs before the barbershop moved into the area.

39.    There was also an attempt to establish a prostitution ring in the area coinciding with

---

[1] https://en.wiktionary.org/wiki/get_high
 Getting high - to intoxicate oneself with drugs or other substances.

Case ID: 250100141

the time when the said (appears to be fake) "barbershop" started its operation in the area, but nobody in the neighborhood was ever involved in any prostitution activities before the said barbershop moved into the area. Later, it is believed the police chased out loitering prostitutes that appeared to be related to the "barbershop" at 5307 Oxford Avenue.

**All illegal and criminal activities increased after Defendant Rogers purchased his property.**

40.    While barbershop operators were involved in illegal drugs' affairs from the time when barbershop organizers moved into the area almost fourteen years ago; however, after Defendant Rogers' purchased the property around June 22, 2021 (over three years ago) the property located at 5307 Oxford Avenue became a center for illegal drugs-related and criminal activities that became accelerated to a full scale.

41.    The Barbershop Owner (the person connected to illegal and criminal activities at 5307 Oxford Avenue property) claimed that Defendant Rogers (the property owner) is his relative.

42.    However, the Barbershop Owner also claimed that he is the owner of the 5307 Oxford Avenue property. This can create a presumption that the real owner of the 5307 Oxford Avenue property is possibly the Barbershop Owner, but because this individual is constantly involved in drugs-related (criminal) activities, there is a possibility that Defendant Rogers is a "straw purchaser" for the criminal enterprise operating illegal businesses related to constant use, distribution, and most-likely manufacturing of narcotics at 5307 Oxford Avenue property.

43.    If Defendant Rogers is indeed a relative of the Barbershop Owner, it could explain the acceleration of all illegal activities at 5307 Oxford Avenue property, after Defendant Rogers purchased the property.

44.    Defendants Lamont E. Rogers, as a property owner knew or should know that 5307 Oxford Avenue property is a place of a constant use of illegal drugs and other criminal activities,

- 7 -

Case ID: 250100141

but failed to do anything and subjected Plaintiff to severe injuries of being poisoned on a daily basis by the occupants of Defendant Rogers' property, where such property became a hub for activities involving illegal drugs.

45.    From the time of the acquisition of 5307 Oxford Avenue property by Defendant Rogers, such property was constantly operated by and/or used as a barbershop on the first floor and two apartments on the second floor, and also as a house of endless consumption and distribution of illegal drugs. See Exhibit A indicating rental advertising of the unlicensed apartments on the second floor of Defendant Rogers' property.

### Possibility of human trafficking at 5307 Oxford Avenue property.

46.    There was a time when Plaintiff was able to hear screams from the apartments on the second floor of 5307 Oxford Avenue property operated by the "barbershop" owner.

47.    It could be assumed that a female was held against her will at that property. For example, multiple times the female voice was loudly screaming approximately, "Let me go" and the male voice was shouting approximately, "What can you do about that?"

48.    As it appears, the occupants of 5307 Oxford Avenue property could be possibly involved in human trafficking or other illegal or criminal affairs.

49.    Even at the present time, several young females are constantly loitering inside the barbershop while they obviously are not involved in any form of "hair cutting" because the barbershop has no visible customers, except the people picking up "something" or smoking drugs together with the occupants of Rogers' property.

50.    These females were observed smoking drugs near the rear entrance to the barbershop. There was also a conversation in front of the barbershop at some point of time, when a female voice (originating from the female standing near the front entrance) was asking a male person if he "wanted her" (as if this female was selling herself). A male person answered that he does not want

Case ID: 250100141

her (and would never want) and he was just curious what the "sh-t" these people are constantly smoking because he has young children (that could be affected).

**Defendant Rogers is willingly operating or condoning the operation of illegal and/or criminal enterprise at his property.**

51. Defendant Rogers is not just a property owner, but he is a willing participant in all illegal activities, conducted at his property and around his property.

52. Not only Defendant Rogers never did anything about extreme and totally sickening noises coming from his property and about all drugs-related illegal activities at his property, but the use and distribution of illegal drugs in and around his property intensified after Plaintiff contacted Defendant Rogers and asked to stop drugs-related and noise-related activities.

53. Even at this time, when legal action is filed, Defendant Rogers is refusing to do anything about illegal and criminal activities created at his property.

54. Defendant Rogers is well aware that the occupants of his property at 5307 Oxford Avenue and the operators of the "barbershop" (that appears to be unlicensed and illegally operating) are involved in illegal and criminal activities, are harassing adjoining property owners, including Plaintiff, and are the originators of the described public and private nuisance.

55. Defendant Roger was fully informed about illegal activities ongoing at his property located at 5307 Oxford Avenue, but he intentionally ignored it and willingly allowed continuation of the described activities at his property, around his property, and by occupants of his property.

56. Plaintiff contacted Defendant Roger multiple times, but Defendant selected to continue operation of illegal and criminal activities at his property.

57. On August 31, 2022, Plaintiff submitted a letter to Defendant Lamont E. Rogers that was delivered to his property at 5307 Oxford Ave, Philadelphia, PA 19124 (see Exhibit B), by stating in part:

Case ID: 250100141

"It was noted that Owners and/or Occupants, and/or Nuisance Producers at 5307 Oxford Avenue property **are regularly creating a public and private nuisance, disorderly conduct, and harassment with your nuisance music noise. Your conduct is defined by the law of the State of Pennsylvania as a public and private nuisance and disorderly conduct.**
This neighborhood and adjoining owners have no need for any additional noise and nuisance from you and your property occupants. You and all your property occupants that are involved in the creation of such public and private nuisance will be held legally responsible if you will continue your music noise and disturbances by playing (inside your barbershop and outside) any music that can be detected through the walls of your property (in adjoining property) or outside of your property…
IT IS HEREBY DEMANDED THAT YOU CEASE AND DESIST immediately from all described disturbing music nuisance activities. If action is not taken by you to cease and desist immediately, you and all involved individuals will be subjected to all remedies available by law, including a legal action…"

58. Nothing was done by Defendant Roger after Plaintiff's August 31, 2022 letter.

59. On January 9, 2024, Plaintiff submitted again a letter to Defendant Rogers that was delivered to his property at 5307 Oxford Avenue, Philadelphia, PA 19124 (see <u>Exhibit C</u>), by stating in part:

"As it was previously communicated to you, **your Second Floor tenants (appears to be the occupants of the apartment in the rear of your property) are constantly creating noise and nuisance, and are regularly holding some sort of all-night parties, where multiple males and females are gathering together, are making loud noise (talking and shouting in extremely loud voice), playing music, singing, and holding some sort of very loud conversations (at nights and during day-time).**
**You do not have a license for any house parties, private nightclubs, or some other form of nuisance and noise production. If your tenants are interested in parties, they should hold their parties in nightclubs or bars…**
I explained to you previously that I have no need for any noise or any nuisance from your property occupants…
**As a property owner, you and all your property occupants that are involved in the creation of such nuisance would be held legally responsible** if you continue the described noise and disturbances that can be detected through the walls of your property (in adjoining property) or outside of your property.
**Neither the owner not the tenant have any legal right to create ANY NOISE, whatsoever, at any time of any day, evening, or night**; with only exception of temporary unavoidable activities, such as cutting a grass or making property repairs (you probably noticed that your long-time property repair noises are excluded from this notice); and even if you conduct any unavoidable activities (like repairs) you are required by law to stop it at 8 P.M…
IT IS HEREBY DEMANDED THAT YOU CONTROL THE ACTIVITIES OF YOUR TENANTS AND EMPLOYEES AND PREVENT IMMEDIATELY ALL DESCRIBED ACTIVITIES AND NUISANCE…"

60. Again, nothing was done by Defendant Roger after Plaintiff's January 9, 2024 letter.

61. On February 15, 2024, Plaintiff submitted a letter to Defendant Lamont E. Rogers

Case ID: 250100141

that was mailed to his residential property, after the public records displayed this mailing address

(see Exhibit D), by stating in part:

> "At least two letters were delivered previously to the Barber Shop ("LetsGetItCut") on the first floor of your property and these letters included your name as the intended recipient; however, no main changes were made in relevance to the nuisance activities at your property.
>
> It was previously communicated to you (through the letters delivered to the Barber Shop) that **your second floor tenants (appears to be the occupants of the second floor apartment in the rear of your property) are constantly creating disturbing unacceptable noise and nuisance, and are regularly holding some sort of all-night nuisance activities, where male and female and sometimes multiple males and females are gathering together, are making loud noises, including but not limited to talking and shouting in extremely loud amplified voice, playing extremely loud music, singing in a full amplified voice with accompanied loud music, holding some sort of very loud endless conversations in amplified voice** (at nights and during day-time); including some strange shouting, moaning and screaming as some sort of a fake orgasms (in extremely disturbing and amplified manner). **These tenants are specifically intensifying their unlawful activities of prohibited nuisance during the night hours and all the way into the morning (shouting, yelling, playing full volume music, singing in full loud voices, speaking in extremely loud voices, and similar).**
>
> **You do not have a license for any house parties, private nightclubs, video and sound production, or for any other form of nuisance and noise creation during any day, evening, and especially the night time.** If your tenants are interested in all-night activities (parties, orgies, shouting, yelling, speaking in extremely loud voices, playing full volume music, singing in a full loud voices, and making other disturbing noises), they should hold their activities in a fully detached buildings and not in the apartment that has a common wall with other properties…
>
> IT IS HEREBY DEMANDED THAT YOU CONTROL THE ACTIVITIES OF YOUR TENANTS AND/OR OCCUPANTS, AND/OR EMPLOYEES, AND CEASE AND DESIST IMMEDIATELY FROM CONTINUANCE OF ALL DESCRIBED ACTIVITIES AND NUISANCE…

62.   Again, nothing was done by Defendant Roger after Plaintiff submitted his February

15, 2024 letter.

63.   On June 14, 2024, Plaintiff again submitted a letter to Lamont E. Rogers that was

mailed to his residential property (see Exhibit E), by stating in part:

> "… After the previous letter dated February 15, 2024, there was some short period without noise; however, it started all over again approximately a couple of months ago.
>
> **This time, the people in your apartment on the second floor (appears to be from the rear apartment) are running what can be considered some sort of music recording/music production affairs by playing loud and sometimes blasting at full volume home-made music seven days a week and mostly every day from approximately 9 A.M. (sometimes earlier) to late afternoons and to late evenings, sometimes until 9 P.M. and sometimes later** (excluding periods of time when they are going out).
>
> **In addition, some people from your building (or related to occupants of your building) from time to time are gathering in front of your property and, as it appears to be, are involved in smoking some substances, after which, they are getting into a condition of unstoppable extremely loud and prolonged (not usual) almost uncontrollable laughing, coughing, very loud and prolonged conversations that can sometimes continue up to 1-2 hours. This usually**

- 11 -

Case ID: 250100141

**happens when somebody is smoking marijuana and some other substances that are illegal in the State of Pennsylvania. In addition, the smell of marijuana sometimes is detectable in the area.**

**It was previously communicated to you that the constant noise coming from your second floor apartment(s) (where at this time somebody decided to establish rap music recording studio and music production) and any use of marijuana and/or smoking (or/and use of other illicit drugs) by occupants of your building will not be tolerated**, because all such disturbing nuisance activities are interfering with the enjoyment of my own property.

**These described activities happening on and around your property are defined by the law of the State of Pennsylvania as a nuisance and disorderly conduct (in addition to any use of marijuana that is totally illegal).** This nuisance will be recorded and documented to support any necessary future legal action against property owners that selected these tenants (if this nuisance would continue).

**Just because your tenants are blasting and recording rap music at the day and evening hours, this is not changing the fact that any nuisance activities creating a noise that can be detected outside of your property limits is prohibited during the entire 24-hour period (any day) and it is a violation of the City of Philadelphia laws (including any sort of music played even during the day time and all that described nuisance gatherings near your property).**

**In Philadelphia we do not have any law that would permit a nuisance and noise during day time hours**. The City of Philadelphia has no free-riding policy for any noise at any time. Your tenants/occupants/and visitors of your building have no legal right to create ANY NOISE (not inside and not outside), not at any during the day, not at any evening time, and obviously not at any night time (**law applies to the entire 24 hour periods**).

**The same applies to any form of smoking (not only smoking of marijuana).** The City of Philadelphia prohibits smoking inside of apartments and buildings and in the same manner prohibits smoking near buildings with occupants. It is also the responsibility of the business and property owners to prevent the noise and smoking violations created not only by your occupants, but also by visitors of your building. **When your occupants are smoking outside, the smoke gets into my property through the windows; and when somebody on your property is smoking inside, the smoke gets into my property through the cracks in the walls (because these buildings are using joint walls, and joint floor and ceiling beams)…**

At this time, I am trying to resolve these matters without involvement of the legal system, but if your tenants and occupants continue such nuisance activities, a lawsuit will be filed against you (as the owner) for interference with enjoyment of life and enjoyment of property. As the property owner, you can be held legally responsible and liable for all damages. Please note that this neighborhood has no need for any nuisance from your tenants and visitors of your building…"

64. Again, nothing was done by Defendant Roger after Plaintiff's June 14, 2024 letter.

65. Exhausted by abhorrent amplified and sickening noises, and constant use of illegal drugs at Defendant Rogers' property, on or around June 20, 2024, Plaintiff delivered to Defendant Rogers' property located at 5307 Oxford Avenue "cease and desist" notices (see Exhibit F), for the first floor (operating as a "barbershop") and for the second floor (apartments), but the occupants of Rogers' property just ignored everything and were continuing the same horrendous nuisance noises and drugs-related activities, as before.

Case ID: 250100141

66.    On June 25, 2024, Plaintiff submitted an email to Defendant Lamont E. Rogers, by stating in part:

> "… **This is the final and the last attempt to resolve your illegal operations in Philadelphia**. **For several years you were informed that your tenants are involved in illegal activities by creating a constant nuisance and by disturbing the adjoining owners.**
> **You did NOTHING, instead of evicting or regulating your offending tenants**. Even after several letters were mailed to you, **you continue to do NOTHING**. As such, do not blame your neighbors for suing you …
> **Your tenants are continuing to operate what appears to be ILLEGAL sound and music recording/production business** from your apartments upstairs and from downstairs so-called "barbershop." Moreover, it appears that your tenants are operating from your apartments upstairs and from downstairs "barbershop" some sort of internet radio station because they are transmitting their utmost offensive nuisance in some sort of amplified manner that can be attributed to something like "internet radio station" or "internet live streaming."
> As such, you are instructed to stop TODAY (irrelevant if you need to drive from Delaware) ALL illegal and nuisance activities at your property located at 5307 Oxford Avenue, Philadelphia, PA 19124; or you will be facing … litigations (and not in small claims courts but in state and federal courts) as long as the nuisance at your property would continue… **STOP your NUISANCE**…

67.    Defendant Rogers did nothing again and illegal activities in and around his property intensified even to a higher degree. In addition to all horrendous nuisance noises, his property also became a center for constant use and distribution hub for illegal drugs and criminal activities.

68.    Renting out property to other individuals always creates a legal responsibility for the property owner for the conduct of tenants, because tenants are becoming substitutes of the property owners, where property owners can be held liable for illegal acts of their tenants.

69.    Defendant Rogers while renting out his property for many years to the individuals with criminal background, was fully aware about activities on his property conducted by his tenants and occupants, especially after Plaintiff sent to Defendant Rogers multiple letters about his place of nuisance, illegal activities and illegal drugs consumption happening on daily basis by numerous occupants of Roger's property.

70.    Even after this legal action was filed, Defendants Rogers did absolutely nothing and he never even attempted to evict the operators of criminal enterprise accumulated at his property. Defendant Rogers did not even answer Plaintiff's Complaint.

Case ID: 250100141

**Defendant Lamont Rogers maintains and operates unlicensed establishments at his property.**

71.    The search of public records shows that Defendant Rogers and/or the occupants of 5307 Oxford Avenue property never had any licenses issued by the City of Philadelphia, and/or the State of Pennsylvania to operate a barbershop at 5307 Oxford Avenue and/or to rent two apartments on the second floor.

72.    The search of public records does not show that this so-called "barbershop" established at 5307 Oxford Avenue property for approximately fourteen years ever had any licenses or permits allowing its operation; and it is presumed that the barbershop has been operating illegally for many years.

73.    In Philadelphia, a property owner needs a separate rental license for each building on any property. Defendant Rogers never acquired any rental licenses for 5307 Oxford Avenue building, but all apartments and the first floor are usually fully occupied. The occupants of the first floor operating as a barbershop and the people from the apartments on the second floor are creating their disturbances and nuisance on a daily basis by constantly smoking and using illegal drugs and by creating sickening disturbing music and other noises.

74.    In addition to the requirement for rental licenses, in the City of Philadelphia and in the State of Pennsylvania, in order to operate a legitimate business, the owner and any tenant involved in the business activities is required to obtain a license to conduct business activities.

75.    Furthermore, in the City of Philadelphia and in the State of Pennsylvania, in order to rent any space at the property and collect the rents, the owner of the property is required to obtain a license to conduct rental activities.

76.    Also, in the State of Pennsylvania, each barbershop, hair cutting or cosmetology business must possess a license issued by the State of Pennsylvania; and not only a license to operate hair cutting business but each individual barber or cosmetologist must have a personal

Case ID: 250100141

professional license to practice a profession that is issued by the State of Pennsylvania, after the completion of about 1250 hours of education and only after passing all required examinations.

77.     Upon information and belief, neither the operators of the so-called "barbershop" at 5307 Oxford Avenue nor the people cutting hair at 5307 Oxford Avenue property ever had all required licenses.

78.     The search of the public records does not indicate that Defendant Rogers and/or the occupants and users of 5307 Oxford Avenue property ever acquired any license to operate a "house of illegal drugs" or to operate a "drugs distribution hub," or a license to operate a "house of horrific gang music," or any license to conduct and participate in any other illegal and criminal activities from the time when Defendant Rogers acquired around June 22, 2021 (over three years ago) his property located at 5307 Oxford Avenue.

79.     The search of public records also does not show that the 5307 Oxford Avenue property ever had any rental licenses permitting to rent of any space or any apartment at the property; and it is presumed that any space and any apartment at 5307 Oxford Avenue property was and is rented illegally during all years of rental activities at that property.

80.     The law is clear and if Defendant Lamont E. Rogers was not maintaining all licensing requirements, he had no lawful ability to operate any business or establishment at his property, or to collect any financial compensation from his tenants or occupants and cannot use his property for any illegal and not licensed purposes.

81.     The official records are indicating that property at 5307 Oxford Avenue, Philadelphia, PA 19124 had no any business licenses at the time when Defendant Rogers had numerous illegal and criminal enterprises actively operated at his property:

Case ID: 250100141



82.    While not having all required licenses, Defendant Rogers was ignoring all Plaintiff's demands to stop illegal and criminal activities at Rogers' property, only because Defendant Rogers was operating his illegal nuisance and "drug house" that would not be allowed under any licensing laws.

83.    Defendant Lamont E. Rogers, as a property owner who failed to obtain all required licenses and failed to comply with licensing laws, subjected Plaintiff on daily basis to severe injuries and trauma to his health, emotional distress and psychological torment, anguish and

Case ID: 250100141

suffering, agony and distress, pain, torture and ordeal, physical injuries of being traumatized and injured on the daily basis by excessive amplified noises coming from Defendant Rogers' property and by being poisoned on daily basis by the occupants of Defendant Rogers' property that are using such property as an illegal hub for activities involving illegal drugs and for production of amplified noise.

84.    At the time when Defendant Rogers was a creator of all nuisance and illegal activities together with his property occupants, Defendants City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, and all individually named municipal representatives knew and should know that 5307 Oxford Avenue property had no all requires licenses but intentionally failed to uphold the applicable laws and to protect Plaintiff and other citizens from illegal and injurious activities happening at Defendant Rogers' property operating as an unlicensed illegal enterprise to inflict severe injuries to Plaintiff on a daily basis.

### Defendant Lamont E. Rogers maintains, operates, or permits the existence of organized criminal "drug house" at his property.

85.    While the place 5307 Oxford Avenue claims to be a "barbershop"; however, multiple shady individuals are constantly loitering inside and outside of that barbershop without any identifiable legitimate purpose, by going in groups outside of the barbershop multiple times each day (seven days per week) to smoke illegal drugs in front and behind of that "barbershop" and to create nuisance noises by talking in amplified voices (under influence of drugs) about their criminal backgrounds, the time spent in prisons, the prisons where they were serving time, their sexual endeavors and similar repugnant subjects, where such discussions are accompanied by uncontrollable laughing, coughing, and strong smell of smoked marijuana and other drugs appearing to be methamphetamines and most-likely crack-cocaine.

86.    The occupants of 5307 Oxford Avenue property, including the people loitering

Case ID: 250100141

inside and outside of so-called "barbershop," are constantly loitering in groups on adjoining sidewalks and behind said "barbershop," always appearing to be under influence of illegal drugs, are communicating with slurred speech, speaking loudly, displaying uncontrollable laughing and coughing, all of which would be associated with intoxication by illegal drugs.

87.    According to the constant odor of the smoked marijuana and other drugs resembling smoked crack cocaine and/or smoked methamphetamines, such nuisance gatherings at and around 5307 Oxford Avenue property are performed every day, several times each day, including Saturdays and Sundays.

88.    Multiple male individuals are also often accompanied by females at the time when these persons are loitering and smoking illegal drugs on the public sidewalks in front of Defendant's property, or near the rear exit of the same property.

89.    Usually drug-users from 5307 Oxford Avenue property are gathering in crowds ranging from 3-4 individuals, and sometimes in larger numbers, and often accompanied by the Barbershop Owner, who seems to be regularly present around drug-users at that property.

90.    All drugs-related activities are conducted through the barbershop located on the first floor, because all involved drug-users at 5307 Oxford Avenue property are usually exiting from the barbershop to smoke illegal drugs and are reaching the rear side of the barbershop only by walking through the barbershop itself for their consumption of drugs and for drugs-gatherings organized behind that barbershop.

91.    These illegal and disorderly operations were and are permitted and/or controlled, and/or organized by the Barbershop Owner located on the first floor of 5307 Oxford Avenue property, where all additional occupants of the property are appearing to be gathering around the Barbershop Owner who is using his "barbershop" (that appears to be unlicensed and illegally operating) as a center for never ending activities involving illegal consumption of illegal drugs.

Case ID: 250100141

92. Upon information and belief, the people occupying apartments on the second floor are also connected, at least some of them, to the barbershop located on the first floor.

93. The occupants of 5307 Oxford Avenue property are disturbing Plaintiff on a daily basis, each and every day and seven days per week. These people are regularly and constantly injuring Plaintiff's health and are preventing Plaintiff from using and enjoying his property.

94. The entire 5307 Oxford Avenue property became a hub for never ending use of illegal drugs and it would be appropriate to call Defendants Lamont Rogers's property as an illegal "drug house."

95. There are constant brawls and street fights originating on and around Defendant Rogers' property, between the people from the barbershop fighting seemingly unsatisfied customers (most-likely unsatisfied about the "quality" of drugs, because this barbershop has almost no hair-cutting customers).

96. Similar street fights that sometimes transferred inside the barbershop are regular events at or near the barbershop located at 5307 Oxford Avenue.

97. The users of illegal drugs from 5307 Oxford Avenue property are usually gathering in the company of the Barbershop Owner when the occupants of 5307 Oxford Avenue are congregating for the consumption of their illegal drugs and they are using the barbershop as some sort of coordination hub for such illegal drugs-related activities.

98. Furthermore, it appears that additional visitors are also joining occupants of 5307 Oxford Avenue for the described use of illegal drugs.

99. While multiple shady individuals are loitering inside and outside of the barbershop, they are appearing to be the persons that would not be permitted to cut any hair. The Pennsylvania law has restrictions on issuance of professional barber licenses to the habitual users of illegal drugs and to the people with criminal background.

Case ID: 250100141

100. As it appears, the only purpose for the presence of these multiple individuals inside and around said barbershop is to constantly use illegal drugs and possibly to manufacture and to distribute narcotics.

101. It was also observed that occupants of the 5307 Oxford Avenue property (loitering inside the barbershop) from time to time are exiting the barbershop and are approaching the cars stopping in the vicinity of that property, and are transferring something to the occupants of the approaching cars that are leaving after receiving something from the occupants of the barbershop.

102. The similar behavior usually exists when somebody distributes controlled and illegal substances.

103. However, after this legal action was filed, the occupants of 5307 Oxford Avenue adjusted their activities and, as it appears, these "pick-up" visitors started to go inside the barbershop for their "pick-ups."

104. Furthermore the sidewalk near 5307 Oxford Avenue property and the alley behind that property are often littered with empty plastic containers that are called by the U.S. Drug Enforcement Agency as "trash cans" [2] (small plastic capsules, usually packed with deadly fentanyl).



105. See the photographs of empty plastic containers discarded on the sidewalk near 5307 Oxford Avenue property. Photographs were taken on December 25, 2024 (before this legal action was filed:

---

[2] https://www.dea.gov/stories/2021/2021-08/2021-08-13/trash-can-drug-threat-mid-atlantic

Case ID: 250100141



106.    In addition, numerous empty plastic containers (that are called by the U.S. Drug Enforcement Agency as "trash cans" for packing fentanyl) were observed on the real alley located near the rear side of 5307 Oxford Avenue property. Empty syringes were also observed in the same area (as usually used by drug addicts).

107.    Also see the glass vial photographed on December 25, 2024, in front of 5307 Oxford Avenue property (this sort of glass containers are usually used for packaging of marijuana and other narcotics):



108.    Not only the people occupying 5307 Oxford Avenue property are consuming tremendous amounts of marijuana, these people are also using other illegal drugs that according to the emitted smell (when occupants of Defendant Rogers' property are smoking these drugs) can be considered to be a crack cocaine and/or "meth" (methamphetamines).

109.    When occupants of Defendant Rogers' property are smoking outside and inside of the property their marijuana and other narcotics that resemble the crack cocaine and/or

Case ID: 250100141

methamphetamines; however, all toxic and poisonous fumes are entering and filling up Plaintiff's property every day and every night, on daily basis, seven days per week, and are causing significant harm to Plaintiff's health and well-being.

110.    Regardless where occupants of 5307 Oxford Avenue are smoking their illegal drugs, the toxic smoke from illegal drug is always getting inside the Plaintiff's property, because it has the adjoining wall and the structures are connected by allowing all toxic substances from 5307 Oxford Avenue to enter Plaintiff's property.

111.    Even when the occupants of 5307 Oxford Avenue property are smoking their illegal drugs outside, the toxic smoke is always getting inside Plaintiff's property through the windows, even when the windows are closed, due to the fact that these users of illegal drugs are staying near the front entrance doors or near the rear exit door to Defendant Rogers' property, which are under the Plaintiff's windows and next to the Plaintiff's doors.

112.    In addition, the drug users at Rogers' property are smoking their illegal narcotics in hordes (multiple people at the same time) for a long period of time, and they are creating an enormous amount of toxic smoke. 5307 Oxford Avenue property is like a poisonous smoke-producing factory that creates toxic and poisonous fumes constantly filling all floors of the Plaintiff's property.

113.    Moreover, the occupants of 5307 Oxford Avenue property are smoking their toxic illegal drugs (including what appears to be crack cocaine and/or methamphetamines) also at night and Plaintiff becomes a victim of poisoning by these drug-users not only at the daytime, evening time, but also at night.

### Suspicious Room(s) inside the barbershop.

114.    The occupants of the barbershop at 5307 Oxford Avenue property created a separate room(s) near the rear exit of the barbershop, where they are maintaining strange and

Case ID: 250100141

suspicious activities.

115.    It appears that it is a part of drugs-related operations at the barbershop, because all drug-users and drug-addicts that are using illegal drugs at 5307 Oxford Avenue property are exiting and entering to and from the room(s) located near the rear exit of the barbershop.

116.    Also the same area is transmitting blasting nuisance music and other repugnant noises entering into the Plaintiff's property, in addition to the rear apartment on the second floor of the Defendant Rogers' property, which is also constantly producing abhorrent nuisance music.

117.    As it appears, the nuisance street gang "music" originates in the apartments on the second floor; however, it is transmitted at the same time to the first floor barbershop.

118.    In addition, the rear apartments on the second floor of the Defendant Rogers' property are also producing all sorts of toxic drugs' fumes from the consumption and, as it appears, manufacturing of illegal drugs by the occupants of Rogers' apartments, where all poisonous fumes are entering Plaintiff's property and are poisoning Plaintiff each and every day.

**Barbershop at 5307 Oxford Avenue is used as a drug-infused "party den."**

119.    The occupants of the barbershop and in the same manner the people from the second floor of 5307 Oxford Avenue property are conducting their illegal operations in a never ending manner.

120.    While very little number of people would be coming for any hair cutting services to the barbershop (because normal people are afraid even to go that barbershop) the owner of this barbershop is always accompanied by numerous other male individuals that are always loitering around barbershop, inside it, in front, in the rear, or are circulating on the street block in groups.

121.    To make the appearance of the "working barbershop," the people loitering inside the "barbershop" are mostly spending time by grooming themselves, between their consumption and distribution of drugs.

Case ID: 250100141

122.    At the time when almost nobody is coming for any hair cutting services to the barbershop, the owner of this barbershop with other male individuals almost always is remaining during evening hours inside the barbershop until late evenings and very often into the late night and morning hours, where in the course of such gatherings the odor of smoked drugs (smoked inside the barbershop) enters into the Plaintiff's property.

123.    Such late night "gatherings" appear to be also some form of "drug parties." For example, on Sunday, December 22, 2024, multiple individuals were gathering inside the barbershop, including males and females. According to noises, it was some sort of a party with a television set blasting noises in an extremely amplified manner and the smell of smoked drugs was filling up the entire Plaintiff's property. The drugs' smell was different from the smell of the smoked marijuana and resembled the smoke from crack cocaine and/or amphetamines. The drug party at 5307 Oxford Avenue property continued approximately until 1:30 in the morning; and Plaintiff needed to vent his property until 4 A.M. from all toxic fumes of the smoked illegal drugs entered from the 5307 Oxford Avenue property (at the time when outside temperature was freezing; and even after that, the smell of toxic drugs eliminating from 5307 Oxford Avenue property still remained).

124.    These late nights "gatherings" accompanied with toxic odors of illegal drugs are common and regular events at 5307 Oxford Avenue property.

**Upon information and belief, Defendant Rogers is operating or is permitting operation of drugs manufacturing facilities at his property – Toxic Chemical Odors.**

125.    Furthermore, as described before, not only the occupants of Defendant Rogers' property are smoking tremendous amount of illegal drugs, where the toxic smoke always enters into the Plaintiff's property, but in addition, other obnoxious chemical odors and other nauseating chemical substances are regularly entering into the Plaintiff's property.

- 24 -

Case ID: 250100141

126. These additional obnoxious chemical odors can indicate that somebody is manufacturing illegal narcotics in Defendant Rogers' property; and there are no explanations for all toxic and poisonous substances entering from Rogers' property into Plaintiff's property.

127. In addition to the smells of smoked illegal drugs, the additional smells that originate from Defendant Rogers' property are chemical, toxic, obnoxious, suffocating, and dangerous. These smells are so poisonous that Plaintiff almost lost consciousness several times, where these chemical poisonous odors are inflicting to Plaintiff severe headaches, nervousness, dizziness, difficulty of breathing (suffocation), coughing, severe damage and irritation of lungs and eyes.

128. The smells and odors originating from Defendant Rogers' property are obvious signs that occupants of his property are most-likely operating clandestine drug lab.

129. Illegal drug labs are extremely hazardous to occupants and neighbors. Persons who manufacture illegal drugs use a wide variety of hazardous materials including flammable solvents, acids, strong caustics, combustible metals, lithium, and anhydrous ammonia. Many of these are inhalation hazards. The manufacturing processes produce a number of hazardous chemicals that can injure or kill even at very low concentration. Illegal drug labs can create a fire or explode, injuring occupants and neighbors.

130. Recently, after the original Complaint was filed with the court and in an attempt to conceal chemical smells and the smells of illegal drugs, the occupants of Defendant Roger's property started to use concentrated commercial type deodorants that are also toxic in high concentrations, as used by these occupants of Rogers' property.

131. The numerous occupants of 5307 Oxford Avenue property do not appear as being legitimately employed in any place; however, they are managing to keep their excessive drug habits and financially supported lifestyle while blasting nuisance and detestable music each day, constant smoking of illegal drugs (inside and outside of 5307 Oxford Avenue property), passing

Case ID: 250100141

something to the stopping cars, loitering in groups and without any legitimate reason throughout each day, where such loitering is accompanied with never ending talking in amplified voices, coughing and laughing (as if under intoxication of illegal drugs), discussing their criminal incarcerations, and never-ending nuisance going throughout the nights.

132.    Nevertheless, even after the original Complaint was filed with the court, Defendant Rogers and the occupants of his property never stopped their illegal, dangerous, and injurious activities.

**In addition to possible manufacturing of narcotics, the occupants of Defendant Rogers' property are appearing to be growing marijuana in the apartments on the second floor.**

133.    In addition to use and, most likely, manufacturing of narcotics, the occupants of Defendant Rogers' property are appearing to be growing marijuana in the apartments on the second floor.

134.    The multiple people loitering at Defendant Roger's property, while not being employed in any legitimate trades, have almost unlimited supply of marijuana and other narcotics. All signs are pointing to the possibility that these people are not only manufacturing narcotics but also are growing marijuana in the apartments on the second floor.

135.    Growing marijuana, even for personal use, is illegal in Pennsylvania and considered a felony under state law. Only fully licensed facilities are allowed to grow marijuana in controlled and limited circumstances that most definitely do not apply to Defendant Rogers' property.

136.    The occupants of the apartments on the second floor (it is believed to be the rear apartment on the second floor, but possibly both apartments), were always keeping their windows open, even during the winter time, from the time they moved into the apartment on the second floor. They also used previously blowing fans, before the occupants of the rear apartment installed window air conditioning that is often operating even during cold temperatures (assumingly in the

Case ID: 250100141

exhaust mode).

137.    Keeping windows open and use of vents and exhausts is not only a way to ventilate illegal drug labs, it is also used to vent out excessive heat accumulated during illegal growing of marijuana.

138.    Furthermore, the occupants at least of the rear apartment in Rogers' property, on the second floor, are keeping very strong lighting in the internal part of the apartment that is not visible from the outside. This strong lighting appears to be turned on 24 hours each and every day.

139.    Marijuana growers use strong lighting to optimize plant growth, increase yields, and potentially enhance cannabinoid production. Specifically, strong lighting is used to maximize photosynthesis, which is crucial for cannabis to produce dense buds and high concentrations of cannabinoids. [3]

140.    Considering the drugs-related background of 5307 Oxford Avenue property, there is a strong possibility that the occupants of Defendant Rogers' property not only are manufacturing illegal narcotics, such as methamphetamines, it is believed that they are also growing marijuana in apartments on the second floor.

141.    All these illegal activities originating at Defendant Rogers' property are injurious to Plaintiff's health and the use of Plaintiff's property.

**Defendant Rogers is operating a nuisance noise house.**

142.    In addition to the numerous people constantly loitering in the barbershop (not for hair cutting purposes), outside on the sidewalk and behind the barbershop, while smoking marijuana and/or crack cocaine and/or methamphetamines, and/or other drugs constantly and multiple times each and every day (but all of such drugs-related activities are illegal, criminal and prohibited in the State of Pennsylvania), Defendant Rogers' occupants are conducting the most

---

[3] https://www.cannabisbusinesstimes.com/lighting/led-lighting-cannabis-cultivation-facility

Case ID: 250100141

appalling nuisance by constantly creating amplified noises created by disturbing gang music transmissions from the barbershop and as it appears from the second floor apartment located in the rear of Rogers' property.

143.    As it appears, Defendant Rogers' occupants are operating something resembling illegal and not licensed music recording studio, or music editing business, or some sort of possibly "internet radio station," or some sort of extremely disturbing and sickening noise-generating activities, where such noises are constantly entering into Plaintiff's property on daily basis, usually seven days per week, every day, and often at the night time.

144.    The so-called "music" at Defendant Rogers' property is some sort of "street gang" type of nuisance deranged "music" consisting of constant banging noises, shouting of obscenities and creation of other disturbing and repugnant noises.

145.    It is also appears that such extremely loud and obscene banging "music" is often simultaneously transmitted from the second floor and from the first floor barbershop, because such "music" and banging noises are entering into Plaintiff's property on both floors equally (sometimes even more loud from the first floor barbershop).

146.    Furthermore, the occupants of the barbershop are creating additional nuisance by keeping an amplified full volume television set in the barbershop that is blasting intolerable nuisance noises each day.

147.    When such gang-music blasting activities are conducted at Defendant Rogers' property it is usually also accompanied with odors of smoked drugs that are entering Plaintiff's property. These drugs are not just marijuana, but also smell as if occupants of 5307 Oxford Avenue property are smoking crack cocaine and/or methamphetamines, and/or some other illegal and toxic drugs.

148.    Furthermore, during these transmissions of their nuisance gang music, almost every

Case ID: 250100141

time a toxic chemical smell similar as if somebody at Defendant Rogers' property is "cooking" (manufacturing) methamphetamines or other toxic drugs starts to enter Plaintiff's property. The smell is chemical, toxic, obnoxious, dangerous, and poisonous. Plaintiff almost lost consciousness several times from these toxic odors coming from Rogers' property, in addition to the fact that these chemical poisonous smells are inflicting to Plaintiff severe headaches, nervousness, dizziness, difficulty of breathing (suffocating), coughing, severe damage and irritation of lungs and eyes.

149.    It is presumed that most-likely, the occupants of Defendant Rogers' property are transmitting their gang music to entertain themselves during their narcotics' manufacturing process or to cover noises from "shaking" and "mixing" processes of drugs' manufacturing, or to conceal noises from pill-(drugs)-pressing machine.

150.    The described activities are defined by the law of the State of Pennsylvania as a nuisance and disorderly conduct (in addition to illegal use and as it appears, manufacturing of narcotics).

151.    Furthermore, there are regular night-long activities happening at 5307 Oxford Avenue property, with some nuisance not-stopping rumbling noises resembling never-stopping talking (of drug users) that continues throughout the many nights (if not to say all nights, or most of the nights). It appears that these noises are coming from the apartments on the second floor of Rogers' property. It is further believed that these activities during nights are related to narcotics' endeavors happening at Defendant Rogers' property on a daily basis.

152.    Such disturbing nuisance and poison-producing activities are creating constant injury to the health of Plaintiff and are interfering with the life, health, wellbeing, and with enjoyment of life and property by Plaintiff.

Case ID: 250100141

**Suspicious events around 5307 Oxford Avenue property.**

153.    About less than a couple of years ago, in the early morning the people from the barbershop were washing off a pool of blood from the sidewalk near the front entrance to their barbershop; however no police or ambulance were called.

154.    Furthermore, around the year 2021 (or later), there was a car parked on the street in front of 5307 Oxford Avenue with what appears to be a dead woman inside. Somebody called the City's paramedics and they took this person; however, she was already visibly bluish and appeared to be lifeless (as in drugs' overdose cases happening near the "drug house"). Nobody came back to that car for approximately a couple of months or longer, and later the car disappeared.

155.    Approximately in the middle of 2023, it was observed that the property at 5307 Oxford Avenue was surrounded and appears to be raided by the federal agents that were accompanied by the Philadelphia Police.

**Defendants Lamont E. Rogers, as a property owner, and his associates refused to stop illegal activities conducted at Rogers' property.**

156.    In the course of several years, Plaintiff was sending numerous letters to Defendant Rogers and was requesting to stop all nuisance and illegal activities at Roger's property. In response, all nuisance and illegal activities at 5307 Oxford Avenue property were even intensified.

157.    When Plaintiff attempted to reason with the Barbershop Owner (the person connected to illegal activities at 5307 Oxford Avenue property and who claimed to be Defendant Rogers' relative), such person told that he is not going to stop any illegal activities; and he would do nothing about the use of drugs at Roger's property, where all drug-users at that property are using barbershop as a center of their drugs-related illegal activities.

158.    When on December 22, 2024, Plaintiff demanded that the operator of the barbershop must stop all nuisance noises coming from the property and must stop all uses of illegal drugs, this

Case ID: 250100141

person told Plaintiff that if Plaintiff dislikes it, he should move out of his own property.

**Defendant Rogers is participating and/or sponsoring illegal activities at his property.**

159.    All described drugs-related and noise-generating activities are defined by the law of the State of Pennsylvania as crimes, illegal activities, nuisance and disorderly conduct.

160.    Toxic fumes of illegal drugs consumed and/or manufactured by the occupants of 5307 Oxford Avenue property, and appalling disturbing noise from the banging gang "music" created at Rogers' property (from the barbershop and from the apartments) continue for many hours every day and seven days a week, during many years.

161.    While Defendant Philadelphia decided to call possession of small amounts of marijuana as an illegal act (instead of criminal act), in Pennsylvania, possession of any amount of marijuana remains to be a criminal offense.

162.    Defendant Rogers and occupants of 5307 Oxford Avenue property also cannot claim any medical "marijuana card" uses because being a "person with a criminal background" it is not a that medical condition that would allow a possession of any marijuana card (considering the fact that occupants of the Rogers' property are often discussing their prison incarcerations while holding marijuana-smoking gatherings under Plaintiff's windows).

163.    Furthermore, all multiple individuals accumulating at Defendant Rogers' property to smoke illegal drugs cannot be all in possession of "medical "marijuana cards" and Defendant Rogers' property is appearing to be drugs' distribution center.

164.    Even if, hypothetically someone can claim any "medical marijuana card" (that should be verified by the police against the database of holders), it is illegal to smoke marijuana even by the holders of "medical marijuana card" because the Pennsylvania law only permits that the holders of "medical marijuana card" can use it in the following forms (2016 Act 16) but nothing is applicable to drugs "wholesale" use at Roger's property:

Case ID: 250100141

… Medical marijuana may only be dispensed to: … a patient who receives a certification from a practitioner and is in possession of a valid identification card issued by the department; and … medical marijuana may only be dispensed to a patient or caregiver in the following forms: (i) pill; (ii) oil; (iii) topical forms, including gels, creams or ointments; (iv) a form medically appropriate for administration by vaporization or nebulization …; (v) tincture; or (vi) liquid.

165. Furthermore, the concentrations of multiple users of illegal drugs, as it is happening at Defendant Rogers' property would require a license to operate a "drugs consumption and distribution center" (that would be a crime in any case) or the prosecution of all operators of the illegal center for the use and distribution of illegal drugs.

166. In addition, "medical marijuana card" law is not applicable to the operation of a poisonous and toxic nuisance house that is used for organized concentration of multiple drug-users constantly smoking illegal drugs (including, assumingly, methamphetamines and crack-cocaine) every day and multiple times per day.

167. In this case, it is irrelevant where the occupants of 5307 Oxford Avenue property are smoking and/or manufacturing their narcotics, because the toxic and poisonous fumes are always entering into the Plaintiff's property.

168. Marijuana smoke is toxic, poisonous, and carcinogenic,[4] and Plaintiff has no desire to be poisoned [5] every day by the groups of the people with criminal background accumulating at 5307 Oxford Avenue property for the consumption of their illegal drugs in the form of "toxic poisonous drugs factory."

169. Moreover, according to the obnoxious toxic odors coming from Defendant Rogers' property, the occupants of 5307 Oxford Avenue property are not only constantly smoking marijuana; it could be concluded that they are also smoking what appear to be crack cocaine and/or methamphetamines, and/or some other illegal drugs.

170. Furthermore, according to the emitted odors and facts, it can be concluded that the

---

[4] https://www.lung.org/quit-smoking/smoking-facts/health-effects/marijuana-and-lung-health
[5] https://www.cdc.gov/cannabis/health-effects/secondhand-smoke.html

Case ID: 250100141

occupants of Defendant Rogers' property are also manufacturing illegal narcotics.

171.    In Pennsylvania, possession and/or distribution of any amount of marijuana, crack cocaine, and methamphetamines, or other illegal drugs is illegal; however, as it appears, the occupants of Defendant Rogers' property have unlimited supply of numerous illegal drugs.

172.    As described above, the occupants of 5307 Oxford Avenue were and are violating the City of Philadelphia, Federal and State laws prohibiting the use of illegal drugs, manufacturing of narcotics, loitering, creation of noises, and disorderly conduct.

173.    Furthermore, the legal penalties for consumption and distribution of illegal drugs are multiplied when it is performed near the protected facilities, such as churches, child-care facilities, and schools. All drugs-related activities at Defendant Rogers' property located at 5307 Oxford Avenue are performed within the city block from three churches (to be precise, Roger's property is between the churches) and about three child care facilities that include schools for children.



174.    Defendant Rogers, while providing his property for the use by the same individuals, was fully aware about activities on his premises performed by his tenants and occupants, especially after Plaintiff sent to Defendant Rogers multiple letters about his place of nuisance, illegal activities and illegal drugs' consumption by numerous occupants of Roger's property.

- 33 -

Case ID: 250100141

175.    Defendants Lamont E. Rogers, as a property owner, City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health knew and should know that 5307 Oxford Avenue property is a place of a constant nuisance and use of illegal drugs, but failed to do anything and subjected Plaintiff to severe injuries of being injured and poisoned on a daily basis by occupants of Defendant Rogers' property that are using such property as an illegal hub for activities involving illegal drugs and by amplified noises originated from Rogers' property.

176.    In addition to personal injuries, the described illegal and criminal activities happening at Rogers' property are directly interfering with the health, life, wellbeing, and enjoyment of property by Plaintiff.

**Official Defendants are liable to the injuries inflicted to Plaintiff's health and for all nuisance and drug-related activities happening at 5307 Oxford Avenue property.**

177.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner knew or should know that 5307 Oxford Avenue property is a place of illegal and criminal drugs-related activities, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

178.    The Official Defendants knew or should know that 5307 Oxford Avenue property has no any required licenses, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

179.    The Official Defendants knew or should know that 5307 Oxford Avenue property is a nuisance place and a drug house, but failed to protect Plaintiff and other citizens.

Case ID: 250100141

180.    The Official Defendants failed to exercise the required duties to protect taxpayers from illegal and criminal activities conducted by parties operating unlicensed businesses and illegal drugs' operations, constant consumption of illegal drugs, and some other drugs-related activities; accompanied by excessive, injurious traumatic noises, disorderly conduct, toxic poisoning of surrounding residents as a result of the constant use and, as it appears, manufacturing of illegal drugs at 5307 Oxford Avenue property.

181.    The Official Defendants knew and should know that the owner and occupants of 5307 Oxford Avenue property are operating numerous unlicensed businesses that are related to so-called "barbershop" and unlicensed rental activities, all connected to illegal drugs' operations conducted on the constant basis and in the form of consumption and distribution of illegal drugs at 5307 Oxford Avenue property by the groups of multiple people that are performing their illegal and criminal activities inside the property, outside the property, and on the City's sidewalks, every day, several times per day, seven days per week, and for many years.

182.    Instead of shutting down 5307 Oxford Avenue property as illegally operating a "drug house," Official Defendants did absolutely nothing.

183.    Furthermore, the Official Defendants knew and should know the owners and occupants of 5307 Oxford Avenue property are creating elimination of obnoxious toxic and poisonous substances, and such toxic poisons are entering into Plaintiff's property, and are creating significant injury to his health and to his property.

184.    Even when the Philadelphia Police is called, they would either not come or even when they would come, this would be several hours later when criminal gathering would dissipate, only to gather again at a later time.

185.    However, the injurious, toxic, and drugs-related activities conducted at 5307 Oxford Avenue property are no better than any criminal physical attacks against citizens, where drugs-

Case ID: 250100141

related activities should be treated by Official Defendants as a first (and not the last) priority.

186.    The same applies to unlicensed activities existing at 5307 Oxford Avenue property. If Official Defendants would shut down all unlicensed activities at 5307 Oxford Avenue property, these people would not be emboldened to the degree of converting their property into an openly operating "drug house" and, as it appears, a place for distribution and seemingly manufacturing of illegal drugs.

187.    Furthermore, the licensing requirements were specifically created to make the property owners to be compliant with existing laws and with their obligations to conduct the criminal, financial, and social background investigations in order to select only the most suitable and law-abiding tenants.

188.    In this case, the property at 5307 Oxford Avenue, as it appears to be is filled with people with extensive criminal backgrounds that are spending each day by blasting detestable gang music, constantly smoking illegal drugs inside and outside of 5307 Oxford Avenue property, are passing something to the stopping cars, are loitering throughout each day around Defendant Rogers' property, in groups and under the influence of drugs, and without any legitimate reason, are organizing street brawls with "unsatisfied customers," are discussing their criminal incarcerations; but none of these occupants of Defendant Roger's property appear to be employed at any legitimate occupation.

189.    Furthermore, there is an appearance that illegal drugs are manufactured at Defendant Rogers' property.

**Defendant Rogers' activities and Official Defendants' failure to uphold the laws created enormous injury to Plaintiff's health, life, and to his property.**

190.    Defendant Lamont Rogers and Official Defendants are directly liable for the nuisance and injuries inflicted to Plaintiff's health from all drugs-related activities and noise

Case ID: 250100141

production happening at 5307 Oxford Avenue property.

191.    Defendant Rogers, as a property owner, and Official Defendants knew and should know that 5307 Oxford Avenue property is a place of a constant use of illegal drugs, but failed to do anything, and subjected Plaintiff to severe injuries on a daily basis.

192.    Defendant Rogers, as a property owner, and Official Defendants knew and should know that 5307 Oxford Avenue property is a place of a constant public and private nuisance, but failed to do anything, and subjected Plaintiff to severe injuries of being poisoned on daily basis by the occupants of Defendant Rogers' property that are using such property as a hub for activities involving extensive consumption of illegal drugs, for illegal drug-related activities, and for numerous other nuisances.

193.    Defendant Lamont E. Rogers, as a property owner, and Official Defendants knew and should know that 5307 Oxford Avenue property is a place of a constant creation of amplified noises, including blasting of amplified detestable "street-gang" music consisting of banging noises mixed with obscenities, but failed to do anything and subjected Plaintiff to severe injuries.

194.    For many years Plaintiff was tortured by illegal activities conducted at 5307 Oxford Avenue property under Defendant Rogers' involvement and participation.

195.    Such disturbing criminal and nuisance activities created and are continuing creation of the injury to Plaintiff's health and are interfering with the life, well-being, and enjoyment of Plaintiff's property.

196.    As a direct, proximate, and legal result of outrageous acts performed by all Defendants, Plaintiff not only already suffered but continues to suffer on a daily basis from injuries, harms and damages created by 5307 Oxford Avenue property occupants.

197.    As a result of Defendants' activities, Plaintiff suffered and suffers from physical and

Case ID: 250100141

psychological trauma and sickness with associated physical manifestations, severe psychological and emotional distress, sleepless nights, nightmares, stress and anxiety, physical and psychological pain, post-traumatic stress disorder, and multiple other physical symptoms, all caused by Defendants' conduct.

198. Because of the illegal activities conducted by Defendant Rogers' occupants under the condolence and permission from Defendant Rogers and from Official Defendants' failing and refusing to uphold the existing laws, and failing to protect taxpayers from illegal "drug houses," and because of toxic fumes of smoked numerous illegal drugs, where chemical vapors and gases produced at Defendant Rogers' property are entering Plaintiff's property on a daily basis, Plaintiff suffered and suffers on daily basis from coughing, difficult to breathe, shortness of breath, irritated and damaged lungs and chest pains, chemical pneumonias, burning eyes and eyes' pain, irritated throat and throat pains, headaches, increased blood pressure, and numerous other ailments related to poisoning from the criminal activities regularly operated at Rogers' property.

199. The said sickness, pain and sufferings were inflicted to Plaintiff only because Defendant Rogers converted his property into an illegal "drug house" and illegal substance distribution hub.

200. Because of the illegal activities conducted by Defendant Rogers' occupants, and Official Defendants' failure to uphold the existing laws and failure to protect taxpayers from illegal "drug houses," and because obnoxious, amplified, obscene, and irritating music and other disturbing noises originating from Defendant Rogers' property are entering Plaintiff's property on a daily basis, Plaintiff experiences on a daily basis severe headaches, psychological and emotional distress, spasms, hyperventilation, and other traumatic and psychosomatic injuries from the excessive noise created at 5307 Oxford Avenue property.

201. The same applies to the constant excessive noises created by the occupants of 5307

Case ID: 250100141

Oxford Avenue property when they are loitering, while smoking illegal drugs and under influence of drugs, in front and in the rear of Defendant Rogers' property.

**Punitive damages are reasonably applicable to the conduct of all Defendants.**

202. As described, the occupants of 5307 Oxford Avenue property created enormous damage to Plaintiff's health by their illegal activities.

203. As described, the occupants of 5307 Oxford Avenue property were and are constantly terrorizing the owners of surrounding properties, including Plaintiff.

204. As described above, the occupants of 5307 Oxford Avenue were and are destroying the value of surrounding properties.

205. Plaintiff was and is harmed on a daily basis by Defendants' outrageous, callous, willful, wanton, reckless, and grossly negligent conduct and in addition to all involved damages, Plaintiff has a case for punitive damages.

206. Moreover, all illegal activities are continuing at Defendant Roger's property.

207. Punitive damages can be awarded for Defendants' conduct that, as this case demonstrates, was outrageous because of Defendant's wantonness and reckless indifference to the rights of Plaintiff and other people that can be affected in a similar way.

208. Defendants were or should be aware of the harm that may be caused to Plaintiff and to other people, and did not try to avoid or prevent the harm. The degree of reprehensibility of Defendant's conduct was sufficiently high.

209. Punitive damages are requested in this case not only because Defendants committed a tort but punitive damages are requested because in addition to torts, this case clearly demonstrates willful, wanton, and reckless indifference.

210. The purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights, to serve as deterrence and punishment function; and

Case ID: 250100141

under the law of this Commonwealth, punitive damages can be awarded when Defendants' conduct is malicious, wanton, willful, or exhibited a reckless indifference to the rights of Plaintiff.

211.    Therefore, Plaintiff is entitled to recover all damages from involved Defendants, including punitive damages.

## CAUSES OF LEGAL ACTION

### COUNT I
### Strict Liability
*Plaintiff vs. Defendant Lamont E. Rogers*

212.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint as if fully set forth in their entirety.

213.    In Pennsylvania, strict liability law holds people and businesses responsible for damages or injuries caused by dangerous activities, even if they were not negligent.

214.    Converting the entire property into a "drug house" with daily use of illegal drugs and blasting obscene "music" on a daily basis, is exactly the dangerous activity that is a subject of strict liability law.

215.    In the same manner, concentration at the property of numerous people with criminal background is also a dangerous activity that is a subject of the strict liability law.

216.    Finally, the operation of unlicensed businesses and allowing the operation of unlicensed businesses by tenants/occupants of Defendant Rogers' property, including a "business" of operating a "house of illegal drugs," is also a dangerous activity that is a subject of the strict liability law.

217.    As direct and proximate cause of Defendant's conduct, Plaintiff suffered from physical and psychological injuries and losses as described in this Complaint, significant harm to his health, pain and suffering, including physical, mental, and emotional harm, mental and

Case ID: 250100141

psychological distress, grief, loss of enjoyment of life, loss of enjoyment of property, loss of productive time, and financial losses.

218.    As a result of Defendant's conduct, Plaintiff is entitled to recover damages against Defendant, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendant from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT II
### Conversion
*Plaintiff vs. Defendant Lamont E. Rogers*

219.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

220.    As alleged, Defendant Lamont E. Rogers in cooperation with occupants of his property and by financially benefiting from the rents originating from his property that was converted to a hub for illegal activities, rendered Plaintiff's property unusable not only for any form of business or other legitimate uses, but unusable even for a basic human habitation.

Case ID: 250100141

221.    Plaintiff lost the ability not only to enjoy and use his own property because of the described dangerous, illegal, and criminal activities originating at Defendant Rogers' property.

222.    The loss of the Plaintiff's enjoyment and use of his property happened because of Defendants Rogers' and his tenants' illegal activities, constant poisonous toxic fumes from the illegal drugs and from other toxic obnoxious chemicals that are regularly entering and filling Plaintiff's property on a daily basis every time when numerous drug users and drug addicts are concentrating at Defendant Rogers' property and are using their illegal drugs inside and outside of Rogers' property.

223.    The people occupying Defendant Rogers' property also are creating never stopping gang-style banging of amplified nuisance "music" that is devoured of any civilized qualities, and are creating nuisance and noisy loitering around Defendant Rogers' property of the groups of people that appear to be under influence of illegal drugs.

224.    Defendant Lamont E. Rogers and his accomplices interfered with Plaintiff's property rights, inflicted and continued infliction to Plaintiff significant injuries and financial losses, and Rogers and his people refused to stop all illegal and nuisance activities at Defendants Rogers' property.

225.    In the course of several years, Plaintiff sent numerous letters to Defendant Rogers and was requesting to stop all nuisance and illegal activities at his property. In response, all nuisance and illegal activities at 5307 Oxford Avenue property were even escalating.

226.    When Plaintiff attempted to reason with the operator of the barbershop (the person connected to illegal activities at 5307 Oxford Avenue property and who claimed to be Defendant Rogers' relative), such person told that he is not going to stop any illegal activities; and told that he would do nothing about the use of illegal drugs at the property, where all drug users at that property are using barbershop as a center of their illegal activities.

Case ID: 250100141

227.    When Plaintiff demanded on December 22, 2024 that the operator of the barbershop must stop all uses of illegal drugs (the drugs-related activities are clearly originating from the barbershop and conducted through the barbershop), and demanded to stop all nuisance noises coming from the property (again, the nuisance noises are also originating from the barbershop), this person told that if Plaintiff dislikes it, he should move out of his own property.

228.    Moreover, there are reasons to believe that the conversion activities were done by Defendant Rogers and by his people intentionally and with the purpose to create intolerable conditions forcing Plaintiff to leave and to sell his property below the market value.

229.    The reasons for Defendant Rogers' conversion activities are twofold. First, if Plaintiff would leave the area, Defendant Rogers and his accomplices would continue their illegal drugs-related activities undeterred and without interruptions. Second, after Defendant Rogers and his people converted the entire area into a hub for use and distribution of illegal drugs, there is an obvious assumption that Plaintiff would need to sell his property below the market value.

230.    As alleged, Defendant Lamont E. Rogers through his own and his property occupants' actions performed unauthorized taking of Plaintiff's property by rendering it useless for any uses, even for a human habitation, all without Plaintiff's consent and Plaintiff as a rightful owner has the right to seek from Defendant Rogers compensation and to recover the full value of such lost property rights and the loss of the enjoyment of property.

231.    Defendant Lamont E. Rogers is liable to Plaintiff for all alleged damages, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological

- 43 -

Case ID: 250100141

trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendant from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

<u>**COUNT III**</u>

**Conspiracy to Create Conversion of Property and to Injure Plaintiff**
*Plaintiff vs. Defendant Lamont E. Rogers*

232.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

233.    As alleged, Defendant Lamont E. Rogers in cooperation with occupants of his property and by financially benefiting from the rents originating from his property that was converted to a hub for illegal activities, and rendered Plaintiff's property unusable not only for any form of business or other legitimate uses but unusable even for a basic human habitation.

234.    In conducting themselves as alleged herein, Defendant Rogers and his drug-using accomplices concentrating at his property were acting in their personal capacities, willingly and on their own personal accord.

235.    In mutual conspiracy, Defendant Rogers and his accomplices knew and should know that their acts would be illegal, harmful, and injurious to Plaintiff.

236.    Accordingly, Defendant Rogers and his accomplices were acting with actual malice in common purpose and knowledge that their conduct would cause harms, injuries, and financial losses to Plaintiff.

Case ID: 250100141

237.    In mutual conspiracy, Defendant Rogers and his accomplices were acting with a common purpose to injure, harass, and to interfere with Plaintiff's ability to use and to enjoy his property.

238.    In the course of several years, Plaintiff sent numerous letters to Defendant Rogers and was requesting to stop all nuisance and illegal activities at his property. In response, all nuisance and illegal activities at 5307 Oxford Avenue property were only escalating.

239.    When Plaintiff attempted to reason with the person who claimed to be Defendant Rogers' relative and who operates a barbershop at Roger's property (that is a center for illegal drugs-related activities at Rogers' property), this person refused to stop never ending drug-related nuisance, consumption of illegal drugs at the property, and other illegal activities. In the same manner, that person refused to stop nuisance from amplified music and disorderly noisy gatherings and loitering of the occupants that appear to be almost always under the influence of drugs.

240.    In addition, when on December 22, 2024, Plaintiff demanded that the operator of the barbershop must stop all nuisance coming from the Defendant Rogers' property, the person operating barbershop at Rogers property (who claimed to be Defendant Rogers' relative) told Plaintiff that if Plaintiff dislikes it, he should move out of his property.

241.    In mutual conspiracy, Defendant Rogers and his accomplices were conspiring in their creation of conversion of Plaintiff's property.

242.    As a result of Defendant Rogers and his accomplices' conspiracy to harass, harm, injure, and to interfere with Plaintiff's ability to use and to enjoy his property, Plaintiff suffered from injuries, damages and losses, and is entitled to recover.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for

Case ID: 250100141

injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendant from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT IV

**Nuisance – Consumption and Distribution of Illegal Drugs**
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

243.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

244.    As alleged, Defendant Lamont E. Rogers in cooperation with occupants of his property and while financially benefiting from the rents and activities at his property, has converted his property into a drug house and a hub for nuisance and illegal activities.

245.    Defendant Rogers in cooperation with drug users and occupants of his property has rendered Plaintiff's property unusable not only for any form of business or other legitimate uses, but unusable even for a basic human habitation.

246.    Plaintiff lost the ability not only to enjoy his own property but he lost the ability to use and to enjoy his property in any manner because of the described dangerous, illegal, and criminal activities at Defendant Rogers' property.

247.    As described in this Complaint, the loss of the Plaintiff's enjoyment and loss of use of his property happened because of Defendant Rogers' and his tenants/accomplices' illegal

Case ID: 250100141

activities, constant poisonous toxic fumes from illegal drugs and from other toxic obnoxious

chemicals that are regularly filling Plaintiff's property after illegal drugs are used inside and

outside of Defendant Rogers' property; never stopping gang-style banging amplified nuisance

"music" that is devoured of any civilized qualities, drugs-related parties at Roger's property,

regular noisy loitering around Defendant Rogers' property of the groups of people with criminal

backgrounds that are concentrating at Defendant Rogers' property and are appearing often to be

under influence of illegal drugs.

248.    Not only that, but because of the extensive drug habits of the people concentrating at

Defendant Rogers' property, extensive daily use of illegal drugs, and as it appears to be

distribution of illegal drugs from the Defendant Rogers' property, there is obvious possibly that

occupants of Defendant Rogers' property are also manufacturing illegal drugs at Roger's property.

249.    As described in this Complaint, Defendant Rogers and his accomplices interfered

with Plaintiff's property rights, inflicted and continue to inflict physical and psychological

injuries, and financial losses to Plaintiff, and refused to stop all illegal and nuisance activities at

Defendants Rogers' property.

250.    35 Pa.C.S.A. § 780-113 (also known as The Controlled Substance, Drug, Device

and Cosmetic Act) provides in relevant parts:

> (a) The following acts and the causing thereof within the Commonwealth are hereby **prohibited**:
> (1) The manufacture, sale or delivery, holding, offering for sale, or possession of any controlled substance, other drug ...
> (2)  The adulteration or misbranding of any controlled substance, other drug, device or cosmetic …
> ***
> (11)  The operation of a drug manufacturing, distributing or retailing establishment, except by registered pharmacists …
> ***
> (15) The sale at retail or dispensing of any controlled substance listed in Schedules II, III and IV to any person …
> (16) Knowingly or intentionally possessing a controlled … substance by a person not registered …
> ***

- 47 -

Case ID: 250100141

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered …

251. The possession of a controlled substance statute covers all illegal drugs.

252. The maximum penalty for possession of a controlled substance in Pennsylvania is 12 months incarceration and a $5,000 fine for a first offense, while a second conviction carries up to three years of incarceration and $25,000 fine.

253. The maximum penalty for possession of a small amount of marijuana in Pennsylvania is 30 days in jail and a $500 fine.

254. 18 Pa.C.S.A. § 6317 (Drug-Free School Zones) provides in relevant parts:

§ 6317.  Drug-free school zones.
(a)  General rule.--A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a) (14) or (30) of the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred **within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground** or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:
(1)  subject to this section; and
(2)  for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

255. Defendant Rogers' property at 5307 Oxford Avenue is located in multiple school zones and within 1,000 feet of the real properties on which a public, private or parochial schools are located (Northeast Childcare & Learning Academy is located at 5325 Oxford Ave, Philadelphia, PA 19124; Grace Trinity Academy is located at 5200 Oxford Ave, Philadelphia, PA 19124) and also within 250 feet of the real property on which playground is located (Northeast Childcare & Learning Academy is located at 5325 Oxford Ave, Philadelphia, PA 19124, just a few buildings away from Rogers' property used by drug-addicts and drug users).

256. Moreover, the children from the Northeast Childcare & Learning Academy are using the sidewalk in front of 5307 Oxford Avenue property when they are taken by teachers for a walk

Case ID: 250100141

(by walking through the place in front of 5307 Oxford Avenue property, where multiple empty plastic containers that are usually used to sell and distribute deadly fentanyl and other dangerous drugs are scattered on the sidewalk).

257.    While the City of Philadelphia attempted to remove criminal penalties for possession of a small amount of marijuana, it still remains illegal in Philadelphia to use or to possess any amount of marijuana.

258.    In addition, the City's attempt to decriminalize possession of a small amount of marijuana has no legal standing because Philadelphia has no legitimate ability to change or to overwrite the existing statutory state and federal laws that are holding that possession and use of any amount of marijuana and other illegal drugs is a criminal offense.

259.    According to the smell of the smoke produced by the occupants of 5307 Oxford Avenue property, these people are not only smoking constantly marijuana but it appears as most-likely, they are also smoking crack cocaine and/or methamphetamines, and/or some other illegal drugs that when are entering into Plaintiff's property (from adjoining 5307 Oxford Avenue property) are making Plaintiff severely sick.

260.    In addition, the small plastic containers described in this Complaint, which are littering the sidewalk near 5307 Oxford Avenue property, are usually used to pack and to distribute deadly drug fentanyl.

261.    Furthermore, operating a drug house is a serious federal offense under 21 U.S.C. § 856 (Maintaining drug-involved premises). This statute is designed to combat the illegal manufacturing, distribution, and use of controlled substances.

262.    21 U.S.C. § 856 (Maintaining drug-involved premises) provides:

**(a)  Unlawful acts**
Except as authorized by this subchapter, it shall be unlawful to—

- 49 -

Case ID: 250100141

(1)  knowingly **open, lease, rent, use, or maintain** any place, whether permanently or temporarily, **for the purpose of manufacturing, distributing, or using any controlled substance**;

(2)  manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

**(b)  Criminal penalties**

Any person who violates subsection (a) of this section shall be sentenced to a term of imprisonment of not more than **20 years** or a **fine of not more than $500,000, or both**, **or a fine of $2,000,000 for a person other than an individual**.

**(c)Violation as offense against property**

A violation of subsection (a) shall be considered an offense against property for purposes of section 3663A(c)(1)(A)(ii) of title 18.

**(d)  Civil penalties**

(1) Any person who violates subsection (a) shall be subject to a civil penalty of not more than the greater of—

(A)  $250,000; or

(B)  2 times the gross receipts, either known or estimated, that were derived from each violation that is attributable to the person.

(2)  If a civil penalty is calculated under paragraph (1)(B), and there is more than 1 defendant, the court may apportion the penalty between multiple violators, but each violator shall be jointly and severally liable for the civil penalty under this subsection.

**(e)  Declaratory and injunctive remedies**

Any person who violates subsection (a) shall be subject to declaratory and injunctive remedies as set forth in section 843(f) of this title.

263.   Defendants City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health knew and should know that 5307 Oxford Avenue property has become a nuisance "drug-involved premises" with never ending drugs-related activities and the entire property was converted to a drug house, but failed to protect Plaintiff from illegal activities.

264.   Defendants City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health failed to exercise the required duties to protect taxpayers from illegal activities conducted by parties operating drugs-related activities at 5307 Oxford Avenue property.

265.   Defendants City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health knew and should know that had the occupants of 5307 Oxford Avenue property are involved in the consumption and, as it appears, distribution of illegal drugs at

Case ID: 250100141

5307 Oxford Avenue property by the groups of multiple people that are performing their illegal activities inside the property, outside the property, and on the City's sidewalks (every day, several times per day, seven days per week, and for many years).

266.    Instead of shutting down 5307 Oxford Avenue property as illegally operating a "drug house," Defendants City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health did absolutely nothing.

267.    In this case, the property at 5307 Oxford Avenue, as it appears to be, is packed with people with extensive criminal backgrounds that are spending each day by blasting nuisance and detestable music, constantly smoking illegal drugs inside and outside of 5307 Oxford Avenue property, are passing something to the stopping cars, are loitering throughout each day around Defendant Rogers' property in groups and, as it appears, under influence of illegal drugs and without any legitimate reason, they are also organizing street brawls with "unsatisfied customers," are discussing their criminal incarcerations; but none of these occupants of Defendant Roger's property appear to be employed at any legitimate occupation, and the described illegal drugs-related activities are not the occupation that is allowed by law.

268.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner knew or should know that 5307 Oxford Avenue property is a place of illegal and criminal drugs-related activities, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

269.    The described disturbing nuisance activities already created and are still creating significant injury to the health of Plaintiff and are interfering with Plaintiff's life, well-being, and

Case ID: 250100141

enjoyment of his life and property.

270.    Accordingly, Defendant Lamont E. Rogers and the Official Defendants are liable to Plaintiff for all alleged injuries, damages, and losses, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendants from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT V
### Nuisance – Creation of Excessive Noise
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

271.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

272.    As alleged, Defendant Lamont E. Rogers in cooperation with occupants of his property and by financially benefiting from the rents and money originating from his property that was converted into a hub for illegal activities, rendered Plaintiff's property unusable not only for any form of business or other legitimate uses, but unusable even for a basic human habitation.

273.    Plaintiff lost the ability not only to enjoy his own property but he lost the ability to

Case ID: 250100141

use and to enjoy his property in any manner because of the described dangerous and illegal activities at Defendant Rogers' property.

**Nuisance noises from gang-style banging amplified nuisance "music" are entering into Plaintiff's property on a daily basis.**

274.    As described in this Complaint, not only  Defendant Rogers' tenants and property occupants are poisoning Plaintiff on a daily basis with toxic fumes from illegal drugs and from other toxic obnoxious chemicals that are regularly filling Plaintiff's property when drug-users at Roger's property are using and smoking illegal drugs inside and outside of Defendant Rogers' property; but in addition, Defendants Rogers' tenants and property occupants are terrorizing Plaintiff with daily nuisance of creating gang-style banging amplified intolerable "music" that is devoured of any civilized qualities.

275.    The so-called "music" at Defendant Rogers' property is some sort of "street gangs" type nuisance "music" consisting of banging noises, shouting of obscenities and creation of other disturbing noises.

276.    The described amplified extremely disturbing nuisance "music" noises are entering into Plaintiff's property constantly and on a daily basis; usually for many hours every day, seven days per week, at any periods of time, including the day time, evenings, and even at night time.

277.    It appears that Defendant Rogers's occupants are operating something resembling illegal music recording studio, or music editing business, or some sort of "internet radio station," or some sort of extremely disturbing and sickening noise-generating activities, where such noises are constantly trespassing into Plaintiff's property on a daily basis.

278.    When such music-blasting activities are conducted at Defendant Rogers' property it is usually also accompanied with odors of smoked illegal drugs entering Plaintiff's property. These drugs are not just marijuana, but also smell as if occupants of 5307 Oxford Avenue property are smoking crack cocaine and/or methamphetamines, and/or other illegal and dangerous drugs.

Case ID: 250100141

**Nuisance noises from loitering occupants of Defendant Rogers' property.**

279.   The occupants from Defendant Rogers' property are regularly loitering around Defendant Rogers' property in groups of several people that are appearing to be under influence of illegal drugs and/or some other forms of intoxication and these people are constantly creating nuisance noises.

280.   While these Defendant Rogers' property occupants are loitering around his property, in front or behind the property, they are usually smoking marijuana and/or some other drugs, according to the smell of the smoke created by these people.

281.   While smoking drugs, these people could talk for hours in amplified voices (as the people under the influence of drugs) and they are communicating with slurred speech, producing uncontrollable laughing and coughing, all of which would be associated with intoxication by using marijuana and/or other illegal drugs. Moreover, the smell of marijuana is a common attribute related to the nuisances originated at Defendant Rogers' property.

282.   Considering the fact that Plaintiff's property is connected to Defendant Rogers' property, these people are loitering and creating nuisance noises almost under Plaintiff's windows.

**Nuisance noises from the barbershop's amplified full volume television set.**

283.   Furthermore, the occupants of the barbershop are creating additional nuisance by keeping a full volume amplified noise from their television set located in the barbershop that is blasting disturbing nuisance noises and these noises are entering into Plaintiff's property and are inflicting harm to Plaintiff.

**Nuisance rumbling noises continue throughout almost all nights at Roger's property.**

284.   In addition, there are constant night-long activities happening at 5307 Oxford Avenue property, with some nuisance constant rumbling noises resembling non-stopping talking that

- 54 -

Case ID: 250100141

continues throughout almost all nights.

285.    It appears that these night-long noises are originating in the rear apartment located on the second floor of Defendant Rogers' property.

286.    In conjunction with the drug-related activities at Rogers' property, where occupants of the second floor apartment were keeping their windows open even at a winter time, or and/or are running window air conditioner even at a cold weather, it could be reasonably assumed that the occupants of Defendant Rogers' property possibly are manufacturing illegal drugs.

287.    These night-long noises are severely interfering with Plaintiff's ability to sleep and to obtain a night rest, and are creating injury to Plaintiff's health and well-being.

288.    Furthermore, the occupants of Rogers' property are often smoking their illegal drugs at night time and Plaintiff is constantly poisoned by drugs from Rogers' property, even when Plaintiff sleeps.

**All Defendants are liable parties.**

289.    The described activities are defined by the law of the State of Pennsylvania as a nuisance and disorderly conduct (in addition to illegal use of numerous drugs).

290.    As described in this Complaint, Defendant Rogers and his accomplices interfered with Plaintiff's property rights, inflicted and continue to inflict physical and psychological injuries, and financial losses to Plaintiff, and refused to eliminate all illegal and nuisance activities at Defendants Rogers' property.

291.    The Philadelphia Code § 10-403 specifically prohibits any sounds from residential and non-residential properties that would exceed 3-5 decibels:

> (1) **Sound Near Protected Facilities**. No person shall create or cause, or permit the creation of, sound that exceeds 3 decibels above background level measured at the property boundary of any hospital, nursing home, house of worship, courthouse, school, library or day care facility...
> (2) **Sound From Residential Properties**. No person shall create or cause, or permit the creation of, sound originating from a residential property… that exceeds 3 decibels above background level… except for the following:

- 55 -

Case ID: 250100141

(a) the operation of lawn maintenance equipment between the hours of 8 a.m. and 8 p.m. … ;
(b) sound originating from an air conditioning or refrigeration unit … sound from such a source shall
not exceed: (i) 5 decibels above background level … ;
(3) **Sound From Non-Residential Properties**.
No person shall create or cause, or permit the creation of, sound originating from a property used for
a non-residential purpose that exceeds:
(a) 5 decibels above background level measured at the property boundary…
***
(8) Exception for Construction Activity. The restrictions of paragraphs (1) through (5) and 7(b) do
not apply to regular construction and emergency and public works construction, provided that all
equipment used in connection with such construction is maintained and operated in compliance with
all applicable law.

292.   Plaintiff, who is sharing a common wall with Defendant Rogers' property has no need

for any noise and nuisance originating from the occupants of Rogers' property; and the

**Philadelphia Code has no any permissions for any specific hours, where the regulation**

**applies 24 hours per day by regulating that any noise coming from Defendant Roger's**

**property cannot be more than 3-5 decibels measured from Plaintiff's side of the common**

**wall** (obviously not from the street level). The only exception is cutting grass, making repairs and

doing construction, and even such limited activities are restricted to a specific number of hours.

293.   3 to 5 decibels is equal to "NO NOISE AT ALL", because even a quiet natural area

with no wind creates a sound of 20 decibels; whispering is measured as 30 decibels; and normal

conversation at 3' is 60-65 decibels.

294.   Accordingly any detectable noise on the Plaintiff's side of the joint with Defendant

Rogers property's wall is a violation of law.

295.   Plaintiff recorded all nuisance activities entering into Plaintiff's property.

296.   Moreover, disturbing music noise is not only a nuisance; it is also a disorderly

conduct. See Pennsylvania Criminal Code - Title 18 of Pennsylvania Statutes, § 5503:

"**§ 5503. Disorderly conduct.**
(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public
inconvenience, annoyance or alarm, or **recklessly creating** a risk thereof, he:
(1) engages in fighting or threatening, or in violent or tumultuous behavior;
(2) **makes unreasonable noise**;
(3) uses obscene language, or makes an obscene gesture; or

- 56 -

Case ID: 250100141

(4)  creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b)  Grading.--An offense under this section is a **misdemeanor of the third degree** if the intent of the actor is to cause substantial harm or **serious inconvenience**, <u>or if he persists in disorderly conduct after reasonable warning or request to desist</u>…"

297.    Plaintiff demanded to stop all noise producing activities happening at Defendant Rogers' property; however, Defendant Rogers and all his occupants refused to cease and desist, and even attempted to harass Plaintiff by trying to force him to move out of his own property.

298.    Furthermore, the nuisance music produced at Defendant Rogers' property contains a significant amount of obscene language that is specifically prohibited by Title 18 of Pennsylvania Statutes, § 5503 and designated as disorderly conduct. As stated, the nuisance and obscene music coming from Defendant Rogers' property was recorded for evidential purposes.

299.    Moreover, neither Defendant Rogers nor any of his occupants have a license to operate music production and/or music recording, and/or nuisance noise production endeavors, neither in the barbershop (that also believed to be unlicensed) nor in the (unlicensed) residential apartments located at Rogers' property.

300.     The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner knew or should know that 5307 Oxford Avenue property is a place of illegal and criminal drugs-related activities, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

301.    The Official Defendants knew or should know that 5307 Oxford Avenue property is a nuisance property, but failed to protect Plaintiff and other citizens from illegal activities at 5307 Oxford Avenue property.

Case ID: 250100141

302.   Instead of shutting down 5307 Oxford Avenue property as illegally operating a "drug house" and a nuisance production place, Official Defendants did absolutely nothing.

303.   The described disturbing nuisance activities already created and are still creating significant injury to the health of Plaintiff and are interfering with Plaintiff's life, well-being, and enjoyment of his life and property.

304.   Accordingly, Defendant Lamont E. Rogers and the Official Defendants are liable to Plaintiff for all alleged injuries, damages, and losses, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT VI
**Nuisance – Prohibited Smoking**
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

305.   Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

- 58 -

Case ID: 250100141

306. As alleged, Defendant Lamont E. Rogers in cooperation with occupants of his property and by financially benefiting from the rents and money originating from his property that was converted into a hub for illegal activities, including never ending smoking of illegal drugs at Defendant Rogers' property, where such illegal smoking rendered Plaintiff's property unusable not only for any form of business or other legitimate uses, but unusable even for a basic human habitation.

307. Plaintiff lost the ability not only to enjoy his own property but he lost the ability to use and to enjoy his property in any manner because of the described dangerous, illegal, and criminal activities at Defendant Rogers' property.

308. Defendant Rogers and his property occupants are in violation of the Philadelphia smoking ban each and every day with all illegal drugs-related activities and smoking of illegal drugs constantly maintained at Defendant Rogers' property each day and several times per day.

309. Such prohibited smoking inside of Defendant Rogers' property and in less than 20 ft from the entrances to Defendant Rogers' property, are in violation not only of the smoking ban but also in violation of the criminal and other laws of this State, because the occupants of Defendant Rogers' property are specifically specializing in smoking of illegal drugs and there is always a constant use of toxic and illegal drugs by the occupants of this property, including the barbershop on the first floor and the apartments on the second floor (at least the rear apartment on the second floor of Roger's property). In addition, all these poisonous smoke products are entering Plaintiff's property every time when people from the barbershop and from Roger's apartments are smoking, and using their illegal drugs.

310. The Philadelphia Code § 10-602 specifically prohibits use of smoke producing products in any business establishment in Philadelphia and also prohibits any form of smoking

Case ID: 250100141

outdoors within twenty (20) feet of any entrance to any enclosed area in which smoking is prohibited.

311. Defendants City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health knew and should know that 5307 Oxford Avenue property has become a dangerous nuisance property, but failed to protect Plaintiff and other citizens from illegal activities.

312. The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner knew or should know that 5307 Oxford Avenue property is a place of illegal and criminal drugs-related activities, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

313. Instead of shutting down 5307 Oxford Avenue property as illegally operating a "drug house" and a nuisance production place, the Official Defendants did absolutely nothing.

314. The described disturbing nuisance activities already created and are still creating significant injury to the health of Plaintiff and are interfering with Plaintiff's life, well-being, and enjoyment of his life and property.

315. Accordingly, Defendant Lamont E. Rogers and the Official Defendants are liable to Plaintiff for all alleged injuries, damages, and losses, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological

Case ID: 250100141

trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT VII

### Nuisance – Operation of Unlicensed Businesses
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

316.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

317.    As alleged, Defendants Lamont E. Rogers in cooperation with occupants of his property and by financially benefiting from the rents and other proceeds originating from his property, converted his property into a hub for illegal activities and rendered Plaintiff's property unusable not only for any form of business or other legitimate uses, but unusable even for a basic human habitation.

318.    The search of public records does not shows that Defendant Rogers and/or the occupants of 5307 Oxford Avenue property ever had any licenses issued by the City of Philadelphia, and/or the State of Pennsylvania to operate a barbershop at 5307 Oxford Avenue, or to rent two apartments on the second floor. It is presumed that the barbershop has been operating illegally for many years and in the same manner, the apartments at 5307 Oxford Avenue were and are rented illegally to the described nuisance creating people.

319.    In the City of Philadelphia and in the State of Pennsylvania, in order to operate a

Case ID: 250100141

legitimate business, the owner and any tenant involved in the business activities is required to obtain a license to conduct business activities.

320.   Furthermore, in the City of Philadelphia and in the State of Pennsylvania, in order to rent any space at the property and collect the rents, the owner of the property is required to obtain a license to conduct rental activities. Separate rental license is required for each property. Public records are clear and Defendant Rogers did not acquire rental license for his 5307 Oxford Avenue property (it is not listed in any searchable records).

321.   In the State of Pennsylvania, each barbershop, hair cutting or cosmetology business must possess a license issued by the State of Pennsylvania; and in addition, each individual barber or cosmetologist must have a personal professional license to practice a profession that is issued by the State of Pennsylvania, after the completion of about 1250 hours of education and only after passing all required examinations.

322.   Upon information and belief, neither the operator of "barbershop" at 5307 Oxford Avenue nor the people cutting hair at 5307 Oxford Avenue property ever had all required licenses.

323.   Furthermore, it is obvious that Defendant Rogers never had neither a license to operate a "drug house" nor a license to operate any sort of music production and noise creation.

324.   Defendant Rogers was ignoring all Plaintiff's demands to stop all illegal activities at Rogers' property, only because Defendant Rogers was operating illegal nuisance and drug house that should not be allowed under any licensing laws.

325.   At the time when Defendant Rogers together with his property occupants was a creator of all nuisance and illegal activities, Defendants City of Philadelphia, Philadelphia Police Department, and Philadelphia Department of Public Health knew and should know that 5307 Oxford Avenue property had no all requires licenses but failed to uphold the applicable laws and to protect Plaintiff and other citizens from illegal and injurious activities happening at Defendant

Case ID: 250100141

Rogers' property operating as an illegal enterprise.

326. Plaintiff lost the ability not only to enjoy his own property but he lost the ability to use and to enjoy his property in any manner because of the described dangerous, illegal, and criminal activities at Defendant Rogers' property.

327. Defendant Rogers and his accomplices interfered and are continuing their interference with Plaintiff's property rights, inflicted financial losses, and refused to eliminate all illegal and nuisance activities at Defendants Rogers' property.

328. The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner knew or should know that 5307 Oxford Avenue property is a place of illegal and criminal drugs-related activities, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

329. The Official Defendants failed to exercise the required duties to protect taxpayers from illegal, criminal, and nuisance activities conducted by parties operating drugs-related activities at 5307 Oxford Avenue property.

330. Instead of shutting down 5307 Oxford Avenue property as illegally operating a "drug house" and a nuisance production place, the Official Defendants did absolutely nothing.

331. The described disturbing nuisance activities already created and are still creating significant injury to the health of Plaintiff and are interfering with Plaintiff's life, well-being, and enjoyment of his life and property.

332. Accordingly, Defendant Lamont E. Rogers and the Official Defendants are liable to Plaintiff for all alleged injuries, damages, and losses, including punitive damages.

Case ID: 250100141

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT VIII
### Reckless Endangerment - Civil Claim
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

333.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

334.    Pennsylvania has a well-settled approach allowing bringing a civil claim that is related to violations of criminal statute, as long as such claim is litigated as civil tort. This civil tort claim is based on the tort of reckless endangerment.

335.    The civil cause of action for reckless endangerment is a civil claim that conveys an actionable tort duty in breach of standard of care, under which Defendants should be held liable.

336.    Defendants directly and proximately endangered the health and well-being of Plaintiff and breached 18 Pa.C.S. § 2705 (Reckless Endangerment); and such breach created a civil tort claim that can be litigated the same way as a breach of any other civil statute or law.

- 64 -

Case ID: 250100141

18 Pa.C.S. § 2705 provides that a party commits a reckless endangerment of another person if he/she places another person in danger.

337.    The aforesaid events occurred as a result of and were directly and proximately caused by the careless, negligent, grossly careless, grossly negligent, and reckless, and fraudulent conduct that placed Plaintiff in danger of serious bodily injury.

338.    Defendants were obligated to conform to standards of conduct, as provided by existing laws. However, Defendants demonstrated reckless endangerment.

339.    Defendants' reckless endangerment, negligence, and gross negligence were represented by conscious and voluntary acts and omissions in reckless disregard of a legal duty and the consequences resulting in reckless endangerment of Plaintiff.

340.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner knew or should know that 5307 Oxford Avenue property is a place of illegal and criminal drugs-related activities, but they did absolutely nothing, neither before nor at this time, even after this legal action was filed.

341.    The losses, injuries, and damages, described in this Complaint, were caused by Defendants' breaches in acting grossly negligent. As such, Plaintiff is entitled to recover.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain

Case ID: 250100141

and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT IX

### Ordinary Negligence

*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

342.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

343.    As described in this Complaint, Defendants performed the acts of negligence.

344.    Defendants owed a legal duty of care to the Plaintiff under the circumstances.

345.    There was an existence of a duty and obligation recognized by law, requiring Defendants to conform to a certain standard of conduct, including but not limited to compliance with all laws and regulations and to exercise reasonable care.

346.    Defendants breached a legal duty to act in a reasonable way and Defendants failed to exercise reasonable care when they failed to comply with all laws and regulations; and failed to exercise reasonable care.

347.    Defendants failed to uphold the established duty of care for the situation and Defendants failed to act in a reasonable way to avoid and to prevent behavior that could be reasonably expected to cause harm and injuries to Plaintiff.

348.    Defendants' breach of required duties and obligations caused to Plaintiff harms, injuries, damages and losses.

Case ID: 250100141

349.   Defendant Lamont E. Rogers was negligent in at least some of the following ways:

    (a)   Negligent and reckless behavior;
    (b)   Failure to act as reasonably prudent under the circumstances;
    (c)   Negligent failing to perform appropriate duties and obligations;
    (d)   Negligent disregard of duties and obligations;
    (e)   Negligent failure to follow proper procedures;
    (f)   Negligent failure to create, adopt and enforce adequate rules and policies;
    (g)   Negligent failure to uphold the proper standard of behavior;
    (h)   Negligent failure to use proper procedures to select the most suitable and law abiding tenants;
    (i)   Negligent failure to perform credit worthiness, criminal and drugs-related background investigation for his tenants;
    (j)   Negligent violation of laws and relevant regulations;
    (k)   Failure to comply with applicable laws and regulations;
    (l)   Operating a business enterprise with full knowledge of unreasonably dangerous conditions;
    (m)   Operating and/or permitting to operate business enterprises with full knowledge that the occupants of his property do not have all proper licenses to operate numerous (illegal) businesses at his property;
    (n)   Operating and/or permitting to operate a nuisance house;
    (o)   Operating and/or permitting to operate a drug house;
    (p)   Otherwise failing to exercise the degree of care required under the circumstances;
    (q)   Otherwise being negligent according to law.

350.   The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner were negligent in at least some of the following ways:

    (a)   Negligent infliction of injuries to Plaintiff;
    (b)   Negligent and reckless behavior;
    (c)   Failure to protect Plaintiff from illegal and criminal activities;
    (d)   Failure to act as reasonably prudent under the circumstances;
    (e)   Negligent failing to perform required duties and obligations;
    (f)   Negligent disregard of duties and obligations;

- 67 -

Case ID: 250100141

(g)  Negligent failure to follow proper procedures;

(h)  Negligent failure to create, adopt and enforce adequate rules and policies;

(i)  Negligent failure to uphold the proper standards of behavior;

(j)  Negligent violation of laws and relevant regulations;

(k)  Failure to comply with applicable laws and regulations;

(l)  Permitting operation of business enterprises with full knowledge of unreasonably dangerous conditions;

(m)  Permitting operation of unlicensed business enterprises;

(n)  Permitting operation of business enterprises with full knowledge that operators do not have all proper licenses to operate numerous (illegal) businesses;

(o)  Permitting to operate a nuisance house;

(p)  Permitting to operate a drug house;

(q)  Otherwise failing to exercise the degree of care required under the circumstances;

(r)  Otherwise being negligent according to law.

351.   Defendants' conduct was done with malice, oppression, and in reckless disregard for Plaintiff's rights.

352.   As a direct and proximate result of Defendants' conduct, actions, or inactions, Plaintiff suffered and continues to suffer from injuries, harms and losses that were directly inflicted by Defendant.

353.   As direct and proximate cause of Defendants' conduct, Plaintiff suffered from physical and psychological injuries and losses as described in this Complaint, significant harm to his health, pain and suffering, including physical, mental, and emotional harm, mental and psychological distress, grief, loss of enjoyment of life, loss of enjoyment of property, loss of productive time, and financial losses.

354.   As an actual, direct, proximate, and legal result of the acts performed by Defendants, and failure to meet the applicable standards of care and in breach of their duty, Plaintiff has been injured, severely traumatized, suffered and continues to suffer from personal physical injuries and physical sickness, severe emotional distress and mental anguish therefrom.

Case ID: 250100141

355.    As a result of Defendants' negligence, Defendants are liable to Plaintiff for all damages allowed under the law, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT X
### Negligent Infliction of Emotional Distress
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

356.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

357.    As described in this Complaint, Defendants negligently and recklessly inflicted Plaintiff physical sickness, related emotional distress, and severe emotional and psychological trauma.

358.    Defendants owed Plaintiff a duty of care under the circumstances, Plaintiff was subjected to an impact; Plaintiff was in a zone of danger and reasonably experienced a fear of impending injury. Furthermore, Plaintiff personally observed a tortious injury inflicted to him.

Case ID: 250100141

359.    There was an existence of a duty and obligation recognized by law, requiring Defendants to conform to a certain standard of conduct, including but not limited to compliance with all laws and regulations and to exercise reasonable care.

360.    Defendants breached a legal duty to act in a reasonable way and Defendant failed to exercise reasonable care when he failed to comply with all laws and regulations.

361.    Defendants failed to uphold the established duty of care for the situation and Defendants failed to act in a reasonable way to avoid reckless behavior that could be reasonably expected to cause injuries to Plaintiff.

362.    Defendants' breach of required duties and obligations caused the harms and actual losses and damages inflicted to Plaintiff.

363.    As a direct and proximate result of Defendants' conduct, actions, or inactions, Plaintiff was subjected to injuries, harms and losses that were directly inflicted by Defendants and therefore is entitled to recover all damages, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

Case ID: 250100141

## COUNT XI
### Negligence Per Se
*Plaintiff vs. Defendants Lamont E. Rogers and Official Defendants*

364.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

365.    The State of Pennsylvania recognizes that a violation of law, statute, or ordinance is negligence per se.[6]

366.    A claim based upon negligence per se is not a private cause of action for violation of statute, but rather Defendants' breach of the standard of care that was also violated because of statutory violations, conveys an actionable tort duty; and therefore, Defendants should be held liable for negligence per se.

367.    The doctrine of per se liability establishes by reference a statutory scheme for the standard of care appropriate to the underlying tort. Here, the statutes and laws that Defendants violated were establishing the necessary standard of care.

368.    Plaintiff was a member of the class of persons that the statutes or regulations were intended to protect and the statutes or regulations violated by Defendants were clearly applicable to the conduct of Defendants. Defendants violated the described statutes or regulations. Such violations of statutes and regulations were the direct and proximate cause of Plaintiff's injuries.

369.    As described in this Complaint, Defendants violated at least several applicable statutes, regulations, and/or provisions of law, such as violations of the state, city, and federal laws referenced in this Complaint, including but not limited to violations of the Philadelphia Code § 10-403 (Prohibition of Sounds Exceeding 3-5 Decibels from Adjoining Property Background), violation of the Philadelphia Code § 10-602 (Prohibition of Smoking), violation of 18 Pa.C.S. § 5503 (Disorderly Conduct), violation of 18 Pa.C.S. § 2705 (Reckless Endangerment), violation of

---

[6] The act of 1891, P.L. 176; *Mack v. Wright et al.*, 180 Pa. 472; *Venango Cnty. v. Penn Bridge Co.,* 215 Pa. 199.

Case ID: 250100141

35 Pa.C.S. § 780-113 (Prohibition of Illegal Drugs), violation of 21 U.S.C. § 856 (Maintaining Drug-Involved Premises), and all other violations of laws as described in this Complaint.

370.    The laws, statutes, and regulations that Defendants violated, were at least in part, to protect the interest of a group of individuals like Plaintiff, as opposed to the public generally.

371.    All laws and regulations that Defendants violated were enacted for safety reasons that are applicable to Plaintiff, and Plaintiff belongs to the class that was intended to be protected by the regulations and laws, where the laws were intended to protect the interests of a group of which Plaintiff is a member.[7]

372.    Defendants' violations of laws and regulations caused the described injuries and damages to Plaintiff and Defendants' violations of statutes and regulations were the direct and/or proximate cause of Plaintiff's injuries, losses, and torts inflicted upon Plaintiff.

373.    As a direct and proximate result of Defendants' conduct, actions, or inactions, Plaintiff has suffered and continues to suffer injuries, losses, and deprivation of his rights.

374.    As a result of Defendants' conduct, Plaintiff is entitled to recover damages against Defendants, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct;

---

[7]    *See Schlemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014); *Mahan v. Am-Gard*, Inc., 841 A.2d 1052, 1058–1059 (Pa. Super. 2003); *Wagner v. Anzon*, Inc., 453 Pa. Super. 619, 684 A.2d 570, 574 (1996).

Case ID: 250100141

award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT XII
### Violation of Plaintiff's Civil Rights Pursuant to 42 U.S.C. § 1983
*Plaintiff vs. Official Defendants*

375.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

376.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner failed to recognize the fact that a citizen, as Plaintiff, has guaranteed and protected statutory and constitutional rights.

377.    Defendants have jointly and severally violated Plaintiff's civil rights pursuant to 42 U.S.C. §1983.

378.    As a direct and proximate result of Defendants' conduct, actions, or inactions, Plaintiff has suffered and continues to suffer injuries, losses, and deprivation of his rights.

379.    As a result of Defendants' conduct, Plaintiff is entitled to recover damages against Defendants, including punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for

Case ID: 250100141

injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT XIII
**Violations of Rights Secured by the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution – Official Defendants' Disregard of Laws and Regulations**
**(42 U.S.C. § 1983)**
*Plaintiff vs. Official Defendants*

380.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

381.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner failed to recognize the fact that a citizen, as Plaintiff, has guaranteed and protected statutory and constitutional rights.

382.    Plaintiff, by and through the Fourteenth Amendment to the United States Constitution, is guaranteed the protection of life, health (including protection from infliction of injuries), liberty, and/or property through the due process of law.

383.    Plaintiff's expectation of protection of his life (including protection from infliction of injuries), liberty, and property would be considered objectively reasonable.

- 74 -

384. Official Defendants infringed Plaintiff's Constitutional rights by disregarding and ignoring the state, federal, and municipal laws and regulations intended to protect Plaintiff's rights, including but not limited to laws and regulations as described in this Complaint.

385. Official Defendants' deliberate indifference and ignorance of laws and regulations, and failure to train, supervise, and discipline employees violated Plaintiff's Constitutional rights.

386. Defendants' actions were severe, pervasive, and outrageous as to shock the conscience, especially when all Official Defendants refused to end the described illegal and criminal activities openly operated at 5307 Oxford Avenue property owned by Defendant Rogers.

387. Plaintiff's life, liberty, and property were severely imposed upon by Official Defendants acting under color of state law when they ignored all applicable laws and regulations, and failed to train, supervise, and discipline their own employees.

388. Official Defendants deprived Plaintiff of substantive due process right to safety, bodily integrity and the right not to be injured.

389. Without any authority to ignore the existing laws designed to protect citizens as Plaintiff, the Official Defendants allowed and permitted violations of relevant laws designed to protect citizens and to impose obligations to enforce the existing laws by the Official Defendants.

390. As a result of Defendants' conduct, Plaintiff suffered injuries, harm and losses, and is entitled to recover damages against Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for

Case ID: 250100141

all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT XIV

**Violations of Rights Secured by the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution – Plaintiff's Right to Safety and Bodily Integrity**
**(42 U.S.C. § 1983)**
*Plaintiff vs. Official Defendants*

391.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

392.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner failed to provide Plaintiff a safe and secure existence where a citizen, as Plaintiff, has guaranteed and protected statutory and constitutional rights.

393.    Plaintiff, by and through the Fourteenth Amendment to the United States Constitution, is guaranteed the protection of life and health (including protection from infliction of injuries), through the due process of law.

394.    Plaintiff's expectation of protection of his life and health (including the protection from infliction of injuries), liberty, and property would be considered objectively reasonable.

395.    Official Defendants failed to provide the equal protection of the laws when Plaintiff had the right to be safe and secure while lawfully residing at his property and by seeking a

- 76 -

Case ID: 250100141

protection from the Official Defendants that refused to provide such protection by ignoring all existing laws that these Official Defendants were obligated to enforce.

396.    Defendants willfully disregarded Plaintiff's Constitutional rights and existing laws and regulations, as described in this Complaint.

397.    Defendants' deliberate indifference and refusal to enforce laws and regulations, and failure to train, supervise, and discipline employees, violated Plaintiff's constitutional rights.

398.    Plaintiff's life, liberty, and property were severely imposed upon by Defendants acting under color of state law, when they ignored all applicable laws and regulations, and failed protect Plaintiff and to train, supervise, and discipline their own employees.

399.    Official Defendants deprived Plaintiff of substantive due process right to life, safety, health, and bodily integrity, and as a result of Defendants' conduct, Plaintiff suffered injuries, harm, and losses, and is entitled to recover damages against Defendants.

400.    As a result of Defendants' conduct, Plaintiff suffered injuries, harm, and losses, and is entitled to recover damages against Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants

Case ID: 250100141

from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## COUNT XV
### Official Defendants' Liability for Failure to Train, Discipline, and Supervise
### (42 U.S.C. § 1983)
*Plaintiff vs. Official Defendants*

401.    Plaintiff restates and incorporates herein by reference all allegations contained in all paragraphs of this Complaint, as if it fully set forth herein in their entirety and alleges further.

402.    The Official Defendants, including but not limited to the City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Public Health, Philadelphia Department of Licenses and Inspections, Philadelphia District Attorney's Office, Cherelle L. Parker, Kevin J. Bethel, Marques Newsome, Palak Raval-Nelson, Bridget Collins-Greenwald, Basil L. Merenda, and Lawrence S. Krasner at all relevant times failed to properly train, supervise, or discipline their employees and supervisors; also including but not limited to, to investigate their fitness to perform the required duties.

403.    The action and/or inaction by the Official Defendants in hiring, training, supervising, and disciplining subordinate employees is part of a larger scheme/pattern/practice that authorizes/permits and/or authorized/permitted the involved employees to violate the United States Constitution, federal and state laws, including Philadelphia's own municipal laws and regulations.

404.    Plaintiff also alleges that the supervising employees/managers responsible for overseeing and reviewing the acts of the responsible employees have also failed to establish a proper training program, disciplinary procedure, supervisory procedure, or other safeguard to enable the involved employees to carry out their duties lawfully, properly, and/or constitutionally.

405.    Plaintiff further alleges, upon information and belief, that the Official Defendants:

- 78 -

Case ID: 250100141

a. failed to train, supervise, and discipline the involved employees;

b. if any program was provided to train, supervise, and discipline employees, such program was inadequate to enable employees responsible in this case to carry out their duties in proper and lawful manner;

c. the Official Defendants were aware of the obvious need for the adequacy of said programs so as to avoid the violation of constitutional rights of others;

d. the Official Defendants knew or should have known that the failure to properly train, supervise, and discipline its employees was likely to result in the violation of constitutional rights;

e. the Official Defendants' policymakers were deliberately indifferent to the need for such training, supervision, and discipline to protect the rights of Plaintiff and other citizens;

f. the failure to provide proper training, supervision, and discipline has caused Plaintiff and others to suffer violations of constitutional rights and created an environment that encourages employees not to comply with laws and regulations.

406. All of the above actions have contributed, and will in the future continue to contribute to the improper treatment of citizens, including Plaintiff, by failure to act and by intentionally or tacitly authorizing a pattern and practice as previously set forth herein.

407. As a direct and proximate result of the Defendants' actions herein alleged, Plaintiff suffered injuries, harm and losses, and is entitled to recover damages against Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, in the amount to be determined at trial, including but not limited to compensatory damages, special damages; compensation for all harms and injuries, including compensation for injuries to Plaintiff's health and well-being, physical and psychological sickness, psychological trauma, emotional distress and mental anguish; compensation for physical and psychological pain and suffering, loss of enjoyment of life; loss of use and enjoyment of property, compensation for all financial losses, punitive damages sufficient to deter Defendant from any similar conduct; award for all current and future expenses and costs, litigation costs, court costs, reasonable attorney's fees, pre-judgment and post-judgment interest; injunctive relief precluding Defendants

Case ID: 250100141

from conducting the described activities; and for any further relief that this Honorable Court deems appropriate, necessary and proper.

## REQUEST FOR INJUNCTIVE RELIEF

408.    This case clearly demonstrates the necessity for enjoining Defendants from engaging in similar tortious, illegal, and prohibited conduct as alleged in this Complaint; and irreparable harm will result if the relief is not granted.

409.    Without injunctive relief, Defendants will continue their reckless and unlawful activities alleged herein, and Plaintiff would remain at unreasonable and serious safety and health risks as a result of Defendants' illegal, tortious, negligent, dangerous, and reckless conduct.

410.    The activities that this injunction seeks to restrain are actionable and the right to relief is clear.

411.    Defendants' wrongs are obvious and clearly demonstrated in this Complaint.

412.    The requested injunction will not adversely affect the public interest and it only can increase the safety and awareness for all people, and would create an assurance that Plaintiff and other people similarly situated would not be subjected again to the same horrendous mistreatment and abuses suffered by Plaintiff.

413.    Moreover, the facts of lawlessness and despicable abuses inflicted by Defendants are the clear and obvious.

414.    The requested injunction will properly restore the parties negatively affected by Defendants' conduct to a victim's status as it existed immediately prior to the alleged wrongful conduct and the requested injunction is reasonably suited to abate the offending activities.

415.    The requested injunction will also positively affect the public interest.

Case ID: 250100141

416.    The requested injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages, and greater injury would result from refusing an injunction than from granting it.

417.    Without injunctive relief, Defendants will continue their reckless and unlawful activities alleged herein, and Plaintiff and other members of the public will remain at unreasonable and serious safety risks as a result of Defendants' illegal, tortious, negligent, dangerous, and reckless conduct.

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

(a)    Empanelling a jury of Plaintiff's peers (12 jurors);

(b)    Holding all involved Defendants liable, jointly and severally, and awarding Plaintiff all damages and losses, including but not limited to compensatory damages, special damages; compensation for all injuries, including compensation for physical injuries and sickness, psychological trauma, emotional distress and mental anguish; compensation for psychological and physical pain and suffering, loss of enjoyment of life; loss of enjoyment of property, financial losses, all past and future medical costs on the count of physical sickness and traumatic experience related to Defendants' tortious, negligent, and unlawful conduct;

(c)    Declaring the conduct of all Defendants to be in violation of relevant laws, and injurious to Plaintiff's rights;

(d)    Issuing the Order awarding injunctive relief precluding all Defendants from similar activities;

(e)    Enjoining all Defendants from engaging in tortious and illegal activities, and prohibited conduct as alleged in this Complaint;

- 81 -

Case ID: 250100141

(f)    Awarding punitive for Defendants' conduct;

(g)    Awarding attorneys' fees, costs, expenses, and disbursements in this lawsuit;

(h)    Awarding prejudgment and postjudgment interest to the extent permitted by law;

(i)    Awarding such further relief as the Court may deem just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial (12 jurors) on all issues and claims set forth in this

Complaint.

Date: May 12, 2025                                  Respectfully submitted,

                                                   /s/ *Sergei Kovalev*
                                                   Sergei Kovalev, Plaintiff

## VERIFICATION

I, Sergei Kovalev, verify that I am the Plaintiff in the present action and facts and statements

contained in the foregoing Complaint are true and correct to the best of my knowledge,

information and belief. I understand that the statements are made subject to the penalties of 18 Pa.

C.S. §4904, relating to unsworn falsification to authorities.

Date: May 12, 2025                                  /s/ *Sergei Kovalev*
                                                   Sergei Kovalev, Plaintiff

- 82 -

Case ID: 250100141

## CERTIFICATE OF SERVICE

I, Plaintiff above stated, hereby certify that on the date indicated below a true and correct copies of the foregoing document were submitted to the court for filing and made available to all parties through counsel of record via the Court's electronic filing system. Filed documents are available for viewing and downloading from the Court's system.

Dominique M. Holly
Assistant City Solicitor
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5044
Fax: (215) 683-5299
Dominique.Holly@phila.gov

Lamont E. Rogers
304 Washington Ave
Wilmington DE 19803

Date: May 12, 2025                        /s/ *Sergei Kovalev*
                                          Sergei Kovalev, Plaintiff

Case ID: 250100141

# EXHIBIT
# A

Case ID: 250100141

 Zillow®

Sign In

 



1 of 13

1 bd | 1 ba | -- sqft

5307 Oxford Ave #B, Philadelphia, PA 19124

**Off market**

Zestimate®: None  | Rent Zestimate®: **$1,136**

Est. refi payment: $ --    **$**    **Refinance your loan**

Home value    Owner tools    Home details    Neighborhood details

Case ID: 250100141

# EXHIBIT
# B

Case ID: 250100141

**FROM NEIGHBOR AFFECTED BY YOUR NUISANCE**

August 31, 2022

To:
BARBER SHOP – "LetsGetItCut"
and
ROGERS LAMONT E.
5307 OXFORD AVE
PHILADELPHIA, PA 19124

RE: Your business and property at 5307 Oxford Avenue, Philadelphia, PA 19124.

**To all Owners, Occupants, and Nuisance Producers at 5307 Oxford Avenue Property:**

It was noted that Owners and/or Occupants, and/or Nuisance Producers at 5307 Oxford Avenue property are regularly creating a public and private nuisance, disorderly conduct, and harassment with your nuisance music noise. Your conduct is defined by the law of the State of Pennsylvania as a public and private nuisance and disorderly conduct.

This neighborhood and adjoining owners have no need for any additional noise and nuisance from you and your property occupants. You and all your property occupants that are involved in the creation of such public and private nuisance will be held legally responsible if you will continue your music noise and disturbances by playing (inside your barbershop and outside) any music that can be detected through the walls of your property (in adjoining property) or outside of your property.

By the City of Philadelphia regulations, you cannot play any music, at any time (any day, evening, or night) that can be detected outside of your property limits or that can be detected in adjoining properties through the walls of your building. At present time, your illegal nuisance music is severely affecting owners of adjoining properties and represents a violation of the City of Philadelphia Code, and violation of the State of Pennsylvania laws.

You do not have any legal right to create ANY NOISE, whatsoever, at any time of any day, evening, or night; with only exception of temporary unavoidable activities, such as cutting a grass or making property repairs (you probably noticed that your long-time property repair noises are excluded from this notice); and even if you conduct any unavoidable activities (like repairs) you are required by law to stop it at 8 P.M.

See excerpt from the Philadelphia Code. § 10-403. (Prohibited Conduct):

> (1) *Sound Near Protected Facilities*. No person shall create or cause, or permit the creation of, sound that exceeds **3 decibels** above background level measured at the property boundary of any hospital, nursing home, house of worship, courthouse, school, library or day care facility.
> ***
> (3) *Sound From Non-Residential Properties*.
> No person shall create or cause, or permit the creation of, sound originating from a property used for a non-residential purpose that exceeds:
> (a) **5 decibels** above background level measured at the property boundary of the nearest occupied residential property.

-1-

Case ID: 250100141

3 to 5 decibels is "NO NOISE AT ALL", because even a quiet natural area with no wind creates a sound of 20 decibels; whispering in a quiet library at 6' is measuring as 30 decibels; and normal conversation at 3' is 60-65 decibels. Accordingly any noise that can be detected outside of your property is a violation of law (the only exceptions are temporary unavoidable activities, such as cutting grass on your property or making repairs, and similar).

Moreover, disturbing music noise is not only a nuisance; it is also a disorderly conduct. See Pennsylvania Criminal Code - Title 18 of Pennsylvania Statutes, § 5503).

> "**§ 5503.  Disorderly conduct.**
> (a)  Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or **recklessly creating** a risk thereof, he:
> (1)  engages in fighting or threatening, or in violent or tumultuous behavior;
> (2)  **makes unreasonable noise**;
> (3)  uses obscene language, or makes an obscene gesture; or
> (4)  creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
> (b)  Grading.--An offense under this section is a **misdemeanor of the third degree** if the intent of the actor is to cause substantial harm or **serious inconvenience**, **or if he persists in disorderly conduct after reasonable warning or request to desist**…"

Also see Philadelphia Code § 10-406 – Penalties (monetary fines) for your nuisance:

> (1) The penalty for an initial violation of this Chapter is a fine of not less than <u>one hundred (100) dollars and not more than three hundred (300) dollars</u>.
> (2) For a second violation within twelve months of a prior violation, the penalty is a fine of <u>not less than two hundred (200) dollars and not more than four hundred (400) dollars</u>.
> (3) For a third violation within twelve months of two prior violations, the penalty is a fine of <u>not less than three hundred (300) dollars and not more than five hundred (500) dollars</u>.
> (4) For a fourth, or subsequent, violation within twelve months of three or more violations, the penalty is a fine of not less than five hundred (500) dollars and not more than seven hundred (700) dollars.
> (5) A violation of the same requirement shall be considered as a separate violation for each day the violation continues.

If you continue your nuisance and disorderly activities, a lawsuit(s) would be filed against property owners, your barbershop (including all other individuals involved in this noise creation) for nuisance, intentional infliction of injuries from loud music, and interference of life and enjoyment of properties by neighboring residents.

Before attempting to create your nuisance music and illegal activities again (including playing any music that can be detected outside of your property limits), you should contact your attorney, who probably will be able to explain you the extent of your liabilities (that can be very significant), because your noise in not only a nuisance and disorderly conduct, it also creates an injury to the health of all surrounding residents.

**IT IS HEREBY DEMANDED THAT YOU CEASE AND DESIST**
**immediately from all described disturbing music nuisance activities. If action is not taken by you to cease and desist immediately, you and all involved individuals will be subjected to all remedies available by law, including a legal action.**

Sincerely,

*Neighbor affected by your nuisance*

-2-

Case ID: 250100141

# EXHIBIT
# C

Case ID: 250100141

**FROM NEIGHBOR AFFECTED BY YOUR NUISANCE**

January 9, 2024

To:
PROPERTY OWNERS and ROGERS LAMONT
BARBER SHOP – "LetsGetItCut"
5307 OXFORD AVE
PHILADELPHIA, PA 19124

RE: Your business and property at 5307 Oxford Avenue, Philadelphia, PA 19124.

**To all Owners, Occupants, and Nuisance Producers at 5307 Oxford Avenue Property:**

As it was previously communicated to you, your Second Floor tenants (appears to be the occupants of the apartment in the rear of your property) are constantly creating noise and nuisance, and are regularly holding some sort of all-night parties, where multiple males and females are gathering together, are making loud noise (talking and shouting in extremely loud voice), playing music, singing, and holding some sort of very loud conversations (at nights and during day-time).

You do not have a license for any house parties, private nightclubs, or some other form of nuisance and noise production. If your tenants are interested in parties, they should hold their parties in nightclubs or bars.

This conduct is defined by the law of the State of Pennsylvania as nuisance and disorderly conduct. This nuisance is recorded and documented to support any necessary legal action (if this would be needed) against property owners that selected these tenants creating a constant disturbance.

I explained to you previously that I have no need for any noise or any nuisance from your property occupants.

By the City of Philadelphia regulations, no noise must be detected from any property limits, at any time (not at any day, evening, and especially not at a night time). At present time, your illegal nuisance is severely affecting adjoining properties and represents a violation of the City of Philadelphia Code, and the State of Pennsylvania laws.

As a property owner, you and all your property occupants that are involved in the creation of such nuisance would be held legally responsible if you continue the described noise and disturbances that can be detected through the walls of your property (in adjoining property) or outside of your property.

Neither the owner not the tenant have any legal right to create ANY NOISE, whatsoever, at any time of any day, evening, or night; with only exception of temporary unavoidable activities, such as cutting a grass or making property repairs (you probably noticed that your long-time property repair noises are excluded from this notice); and even if you conduct any unavoidable activities (like repairs) you are required by law to stop it at 8 P.M.

Furthermore, it appears that your tenants or your employees are periodically gathering next to your property in groups and holding some noisy and agitated conversations. Gathering without any legitimate purpose is considered to be loitering (see Philadelphia Code).

-1-

Case ID: 250100141

See excerpt from the Philadelphia Code. § 10-403. (Prohibited Conduct):

(1) *Sound Near Protected Facilities*. No person shall create or cause, or permit the creation of, sound that exceeds **3 decibels** … measured at the property boundary of any hospital, nursing home, house of worship, courthouse, school, library or day care facility.
(2) *Sound From Residential Properties*. No person shall create or cause, or permit the creation of, sound originating from a residential property … or that exceeds **3 decibels** above background level measured beyond the property boundary except for the following:
(a) the operation of lawn maintenance equipment between the hours of 8 a.m. and 8 p.m., provided the equipment is functioning within manufacturer's specifications and with sound-reducing equipment in use and in proper operating condition;
(b) sound originating from an air conditioning or refrigeration unit or system…
(3) *Sound From Non-Residential Properties*.
No person shall create or cause, or permit the creation of, sound originating from a property used for a non-residential purpose that exceeds:
(a) **5 decibels** … measured at the property boundary of the nearest occupied residential property.

3 to 5 decibels level is "NO NOISE AT ALL", because even a quiet natural area with no wind creates a sound of 20 decibels; whispering in a quiet library at 6' is measuring as 30 decibels; and normal conversation at 3' is 60-65 decibels. Accordingly, if any adjoining resident can hear a noise coming from your property through the wall) or outside of your property, it is a violation of law (the only exceptions are temporary unavoidable activities at a day time, such as cutting grass on your property or making repairs, and similar).

Moreover, disturbing noise (as, for example, your tenants' night and day parties inside their apartment and agitated outside gatherings) is not only a nuisance; it is also disorderly conduct. See Pennsylvania Criminal Code - Title 18 of Pennsylvania Statutes, § 5503).

"**§ 5503.  Disorderly conduct.**
(a)  Offense defined…
(1)  engages in fighting or threatening, or in violent or tumultuous behavior;
(2)  **makes unreasonable noise**…

In addition, please address the issue of your tenants placing their personal trash outside on any day. Since the collection day is on Wednesday, your tenants only can place their trash on the evening before or early in the morning on the collection day. Also, ask your tenants to place trash (further from my property) on the level of the sidewalk adjoining to your property, because I have no desire to be ticketed for your tenants' trash (somebody was even placing trash bags in front of my property).

**IT IS HEREBY DEMANDED THAT YOU CONTROL THE ACTIVITIES OF YOUR TENANTS AND EMPLOYEES AND PREVENT IMMEDIATELY ALL DESCRIBED ACTIVITIES AND NUISANCE. If action will not be taken by you immediately, I will be proceeding with appropriate legal action. I have no interest in continuing sleepless nights when your tenants are holding night parties. As explained, your tenants should not be producing any noise at any time and completely stop all noise-creating activities, especially after 11 PM** (in the future, please select only tenants that can reside in a quiet manner; otherwise, you are responsible for your tenants' activities).

Sincerely,

*Your Neighbor*

-2-

# EXHIBIT
# D

Case ID: 250100141

**SERGEI KOVALEV**
**5305 OXFORD AVENUE**
**PHILADELPHIA, PA 19124**

February 15, 2024

Mr. Lamont E. Rogers
304 Washington Ave
Wilmington DE 19803

RE: Your property at 5307 Oxford Avenue, Philadelphia, PA 19124.

This letter is addressed to you because you are identified in public records as the owner of property located at 5307 Oxford Avenue, Philadelphia, PA 19124. While the owner of the Barber Shop (located on the first floor of your property) identified himself previously as the owner, it is not established if he has ownership interest in this property or he is only the owner of the Barber Shop. At least two letters were delivered previously to the Barber Shop ("LetsGetItCut") on the first floor of your property and these letters included your name as the intended recipient; however, no main changes were made in relevance to the nuisance activities at your property.

It was previously communicated to you (through the letters delivered to the Barber Shop) that your second floor tenants (appears to be the occupants of the second floor apartment in the rear of your property) are constantly creating disturbing unacceptable noise and nuisance, and are regularly holding some sort of all-night nuisance activities, where male and female and sometimes multiple males and females are gathering together, are making loud noises, including but not limited to talking and shouting in extremely loud amplified voice, playing extremely loud music, singing in a full amplified voice with accompanied loud music, holding some sort of very loud endless conversations in amplified voice (at nights and during day-time); including some strange shouting, moaning and screaming as some sort of a fake orgasms (in extremely disturbing and amplified manner). These tenants are specifically intensifying their unlawful activities of prohibited nuisance during the night hours and all the way into the morning (shouting, yelling, playing full volume music, singing in full loud voices, speaking in extremely loud voices, and similar).

You do not have a license for any house parties, private nightclubs, video and sound production, or for any other form of nuisance and noise creation during any day, evening, and especially the night time. If your tenants are interested in all-night activities (parties, orgies, shouting, yelling, speaking in extremely loud voices, playing full volume music, singing in a full loud voices, and making other disturbing noises), they should hold their activities in a fully detached buildings and not in the apartment that has a common wall with other properties.

These activities are defined by the law of the State of Pennsylvania as nuisance and disorderly conduct. This nuisance is recorded and documented to support any necessary future legal action against property owners that selected these tenants (if this nuisance would continue).

By this letter, you are informed that your tenants are severely interfering with my ownership right to possess my property in a quiet enjoyment, your tenants are constantly disturbing enjoyment of my own property, and they are trespassing upon my ownership rights. I have no

-1-

Case ID: 250100141

need for any noise or any nuisance coming from your tenants and occupants. I also have no interest in having sleepless nights when your tenants are holding all night disturbing activities, orgies, and parties.

In addition, your Barber Shop occupants (located on the first floor of your property) are also keeping high volume music during hours of their business operation.

By the City of Philadelphia regulations, no noise must be detected from any property limits (including through the walls between the adjoining properties or outside of your property) at any time. This law applies to any day, evening, and especially at night time. At present time, the illegal nuisance created at your property is severely affecting adjoining properties and represents a violation of the City of Philadelphia Code, and the State of Pennsylvania laws.

Neither the owner nor the tenant has any legal right to create ANY NOISE, whatsoever, at any time of any day, evening, or night. The only exception from the noise laws and ordinances would be temporary unavoidable activities, such as construction, making property repairs, and cutting grass; and even if people are performing unavoidable activities (like repairs) they are required by law to stop it at 8 P.M.

The described behavior is defined by the law of the State of Pennsylvania as a nuisance and disorderly conduct. In your case, you do not have a license for any house parties, private nightclubs, video production, or any other form of nuisance and noise production during any day, evening, and especially the nights. If your tenants are interested in parties, orgies, shouting, yelling, speaking in extremely loud voices, playing full volume music, or singing in full loud voices, they should be holding their activities only in a detached building and not in the building that has a common wall with other properties.

See excerpt from the Philadelphia Code. § 10-403. (Prohibited Conduct):

> (1) *Sound Near Protected Facilities*. No person shall create or cause, or permit the creation of, sound that exceeds **3 decibels** … measured at the property boundary of any hospital, nursing home, house of worship, courthouse, school, library or day care facility.
> (2) *Sound From Residential Properties*. No person shall create or cause, or permit the creation of, sound originating from a residential property … or that exceeds **3 decibels** above background level measured beyond the property boundary except for the following:
> (a) the operation of lawn maintenance equipment between the hours of 8 a.m. and 8 p.m., provided the equipment is functioning within manufacturer's specifications and with sound-reducing equipment in use and in proper operating condition;
> (b) sound originating from an air conditioning or refrigeration unit or system…
> (3) *Sound From Non-Residential Properties*.
> No person shall create or cause, or permit the creation of, sound originating from a property used for a non-residential purpose that exceeds:
> (a) **5 decibels** … measured at the property boundary of the nearest occupied residential property.

3 to 5 decibels level is "NO NOISE AT ALL", because even a quiet natural area with no wind creates a sound of 20 decibels; whispering in a quiet library at 6' is measuring as 30 decibels; and normal conversation at 3' is 60-65 decibels. Accordingly, if any adjoining resident can hear a noise coming from your property through the wall) or outside of your property, it is a violation of law (the only exceptions are temporary unavoidable activities at a day time, such as cutting grass on your property or making repairs, and similar).

Case ID: 250100141

Moreover, disturbing noise is not only a nuisance; it is also disorderly conduct. See Pennsylvania Criminal Code - Title 18 of Pennsylvania Statutes, § 5503).

> "**§ 5503.  Disorderly conduct.**
> (a)  Offense defined…
> (1)  engages in fighting or threatening, or in violent or tumultuous behavior;
> (2)  **makes unreasonable noise**…

In addition, according to the smell coming from your property (as it appears to be from the second floor apartment in the rear of your property), the smell of burning/smoked cannabis/marijuana is trespassing into my property. Most definitely, I would not tolerate this sort of trespass into my property through the use of any sort of illegal substances in your building (nobody eliminated the legal consequences for the use of drugs in the State of Pennsylvania).

There was also the issue of your tenants placing their personal trash on the sidewalk at any day of the week and creation of unsanitary conditions. Due to the fact that the collection day is on Wednesday, your tenants only can place their trash out on the evening before or early in the morning on the collection day.

As the property registered owner, you can be held legally responsible and liable for all damages if the described noise and disturbances would continue. Before continuing and allowing continuance of the described nuisance, it is suggested that you contact your attorney, who probably will be able to explain the extent of your liabilities that can be very significant because the described activities are not only nuisance and disorderly conduct; these activities are also creating an injury to the health of adjoining residents.

**IT IS HEREBY DEMANDED THAT YOU CONTROL THE ACTIVITIES OF YOUR TENANTS AND/OR OCCUPANTS, AND/OR EMPLOYEES, AND CEASE AND DESIST IMMEDIATELY FROM CONTINUANCE OF ALL DESCRIBED ACTIVITIES AND NUISANCE.**

If the described nuisance would not be discontinued in an immediate manner, I will have no choice but to proceed with appropriate legal action and will be utilizing all other available remedies as provided by law. I have no interest in being constantly disturbed by your tenants and occupants of your property, and to suffer from emotional distress and sleepless nights when your tenants are involved in creation of nuisance and disorderly conduct. As it was explained, your tenants should not be producing any noise at any time (day, evening, or night) and are required to completely stop all noise-creating activities, especially after 11 PM (they cannot even talk in loud voices after 11 P.M.). In the future, please select only tenants that can reside in a quiet manner; otherwise, you will be responsible for your tenants' activities.

For any additional questions you can contact me by email:
s14391@gmail.com

Sincerely,

*Your Neighbor*

-3-

# EXHIBIT
# E

Case ID: 250100141

**SERGEI KOVALEV**
**5305 OXFORD AVENUE**
**PHILADELPHIA, PA 19124**

June 14, 2024

Mr. Lamont E. Rogers
304 Washington Ave
Wilmington DE 19803

RE: Your property at 5307 Oxford Avenue, Philadelphia, PA 19124.

This letter is addressed to you because you are identified in public records as the owner of property located at 5307 Oxford Avenue, Philadelphia, PA 19124.

After the previous letter dated February 15, 2024, there was some short period without noise; however, it started all over again approximately a couple of months ago.

This time, the people in your apartment on the second floor (appears to be from the rear apartment) are running what can be considered some sort of music recording/music production affairs by playing loud and sometimes blasting at full volume home-made music seven days a week and mostly every day from approximately 9 A.M. (sometimes earlier) to late afternoons and to late evenings, sometimes until 9 P.M. and sometimes later (excluding periods of time when they are going out).

In addition, some people from your building (or related to occupants of your building) from time to time are gathering in front of your property and, as it appears to be, are involved in smoking some substances, after which, they are getting into a condition of unstoppable extremely loud and prolonged (not usual) almost uncontrollable laughing, coughing, very loud and prolonged conversations that can sometimes continue up to 1-2 hours. This usually happens when somebody is smoking marijuana and some other substances that are illegal in the State of Pennsylvania. In addition, the smell of marijuana sometimes is detectable in the area.

It was previously communicated to you that the constant noise coming from your second floor apartment(s) (where at this time somebody decided to establish rap music recording studio and music production) and any use of marijuana and/or smoking (or/and use of other illicit drugs) by occupants of your building will not be tolerated, because all such disturbing nuisance activities are interfering with the enjoyment of my own property.

These described activities happening on and around your property are defined by the law of the State of Pennsylvania as a nuisance and disorderly conduct (in addition to any use of marijuana that is totally illegal). This nuisance will be recorded and documented to support any necessary future legal action against property owners that selected these tenants (if this nuisance would continue).

Just because your tenants are blasting and recording rap music at the day and evening hours, this is not changing the fact that any nuisance activities creating a noise that can be detected outside of your property limits is prohibited during the entire 24-hour period (any day) and it

-1-

Case ID: 250100141

is a violation of the City of Philadelphia laws (including any sort of music played even during the day time and all that described nuisance gatherings near your property).

In Philadelphia we do not have any law that would permit a nuisance and noise during day time hours. The City of Philadelphia **has no** free-riding policy for any noise at any time. Your tenants/occupants/and visitors of your building have no legal right to create ANY NOISE (not inside and not outside), not at any during the day, not at any evening time, and obviously not at any night time (law applies to the entire 24 hour periods).

The same applies to any form of smoking (not only smoking of marijuana). The City of Philadelphia prohibits smoking inside of apartments and buildings and in the same manner prohibits smoking near buildings with occupants. It is also the responsibility of the business and property owners to prevent the noise and smoking violations created not only by your occupants, but also by visitors of your building. When your occupants are smoking outside, the smoke gets into my property through the windows; and when somebody on your property is smoking inside, the smoke gets into my property through the cracks in the walls (because these buildings are using joint walls, and joint floor and ceiling beams).

By the City of Philadelphia regulations, no noise should be detected from any property limits (including through the walls between the adjoining properties or outside of your property) at any time. This law applies to any day, evening, and especially night time (24 hours per day). At present time, the illegal nuisance created at your property is severely affecting adjoining properties and represents a violation of the City of Philadelphia Code, and the State of Pennsylvania laws. Neither the owner nor any tenant has any legal right to create ANY NOISE or NUISANCE whatsoever.

The only exception from the noise laws would be temporary unavoidable activities, such as construction, making property repairs, and cutting grass; and even the unavoidable activities (like repairs or construction) required by law to be stopped it at 8 P.M.

If your tenants are interested in music recording, shouting, yelling, speaking in loud voices, playing loud music, or smoking some substances (inside and/or outside), they should be renting a different place and to hold their activities only in a detached distant building, but not in the building (or around buildings) that is attached to other buildings.

See excerpt from the Philadelphia Code. § 10-403. (Prohibited Conduct):

> (1) *Sound Near Protected Facilities*. No person shall create or cause, or permit the creation of, sound that exceeds **3 decibels** … measured at the property boundary of any hospital, nursing home, house of worship, courthouse, school, library or day care facility.
> (2) *Sound From Residential Properties*. No person shall create or cause, or permit the creation of, sound originating from a residential property … or that exceeds **3 decibels** above background level measured beyond the property boundary except for the following:
> (a) the operation of lawn maintenance equipment between the hours of 8 a.m. and 8 p.m., provided the equipment is functioning within manufacturer's specifications and with sound-reducing equipment in use and in proper operating condition;
> (b) sound originating from an air conditioning or refrigeration unit or system…
> (3) *Sound From Non-Residential Properties*.
> No person shall create or cause, or permit the creation of, sound originating from a property used for a non-residential purpose that exceeds:
> (a) **5 decibels** … measured at the property boundary of the nearest occupied residential property.

-2-

Case ID: 250100141

3 to 5 decibels level is "NO NOISE AT ALL", because even a quiet natural area with no wind creates a sound of 20 decibels; whispering in a quiet library at 6' is measuring as 30 decibels; and normal conversation at 3' is 60-65 decibels. Accordingly, if any adjoining resident can hear a noise coming from your property through the wall) or outside of your property, it is a violation of law (the only exceptions are temporary unavoidable activities at a day time, such as cutting grass on your property or making repairs, and similar).

Moreover, disturbing noise is not only a nuisance; it is also disorderly conduct. See Pennsylvania Criminal Code - Title 18 of Pennsylvania Statutes, § 5503).

> "**§ 5503. Disorderly conduct.**
> (a) Offense defined…
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) **makes unreasonable noise**…

**Accordingly, IT IS HEREBY DEMANDED THAT YOU CEASE AND DESIST IMMEDIATELY FROM CONTINUANCE OF ALL DESCRIBED ACTIVITIES AND NUISANCE AND EXERCISE CONTROL OVER THE ACTIVITIES OF YOUR TENANTS AND/OR OCCUPANTS, AND/OR EMPLOYEES.**

By this letter, you are informed that your tenants are severely interfering with my ownership right to possess my property in a quiet enjoyment, your tenants are constantly disturbing enjoyment of my own property, and they are trespassing upon my ownership rights. I have no need for any noise or any nuisance coming from your tenants and occupants.

If the described nuisance would not be discontinued in an immediate manner, I will have no choice but to proceed with appropriate legal action and will be utilizing all available remedies as provided by law. I have no interest in being constantly disturbed by your tenants and occupants of your property. As it was explained, your tenants should not be producing any noise at any time, not inside and not outside your property (neither at day, evening, or night time).

At this time, I am trying to resolve these matters without involvement of the legal system, but if your tenants and occupants continue such nuisance activities, a lawsuit will be filed against you (as the owner) for interference with enjoyment of life and enjoyment of property. As the property owner, you can be held legally responsible and liable for all damages. Please note that this neighborhood has no need for any nuisance from your tenants and visitors of your building.

For any additional questions you can contact me by email: s14391@gmail.com (it would be more convenient if the next time I can send similar notes to your personal email (if you can provide it). In the future, please select only tenants that can reside in a quiet manner without disturbing other people; and are not smoking inside or near your property; otherwise, you will be responsible for your tenants' activities.

Sincerely,

*Your Neighbor*

-3-

# EXHIBIT
# F

Case ID: 250100141

# TO ALL OCCUPANTS
# of the <u>Second Floor</u> at 5307 Oxford Ave

## CEASE AND DESIST

(stop and never start again) instantly from all noise and nuisance producing activities, including but not limited to smoking (inside or outside) and transmission of music and other sounds that are detectable outside of your building walls (and prohibited by law) at any period of time, including day, evening, and night time within each 24-hour period. Continuance of the described prohibited activities will be a subject of all actions provided by law.

(Only noises originated from the construction and repair activities are permitted during the day time in the City of Philadelphia – see Philadelphia Code).

_____

# TO ALL OCCUPANTS
# of the <u>First Floor</u> at 5307 Oxford Ave

## CEASE AND DESIST

(stop and never start again) instantly from all noise and nuisance producing activities, including but not limited to smoking (inside or outside) and transmission of music and other sounds that are detectable outside of your building walls (and prohibited by law) at any period of time, including day, evening, and night time within each 24-hour period. Continuance of the described prohibited activities will be a subject of all actions provided by law.

(Only noises originated from the construction and repair activities are permitted during the day time in the City of Philadelphia – see Philadelphia Code).

Case ID: 250100141